## ED. GARVIN v. THE STATE.

CONSTITUTIONAL LAW.  *Keeping a gaming house.*  Act of 1883, chapter 230, embraces but one subject and is constitutional.  "Etc" at the end and part of the title of an act means "and others," and "and-so-forth," and is not to be rejected.  "Such" refers to something which has preceded and means "of that particular character specified."  An act may be valid if the intention of the Legislature can be intelligently gathered from the whole act, however awkwardly expressed.  The object and purpose of the Constitution in providing that an act shall embrace but one subject, which shall be expressed in the title, is to give notice to the legislator of the subject of legislation, and it is sufficient so long as the subject-matter of the act is germane to that expressed in the title, whether the body enlarges or restricts the title.  If a statute admits two constructions, one of which would render it constitutional, and the other unconstitutional, the former should be adopted.  And a doubt in relation to its constitutionality should be resolved in favor of the act.

### FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county.   J. M. GREER, J.

W. H. CARROLL, GEORGE GANTT and J. J. VER-TREES for Garvin.

ATTORNEY-GENERAL LEA for the State.

TURNEY, J., delivered the opinion of the court.

There are two counts in the indictment. The first, for keeping a room for the purpose of encouraging, promoting, aiding and assisting the playing of a certain game called "faro," for money. Second, for keeping, exhibiting and operating a certain table for the playing of a game called "faro," for money.

A motion to quash was overruled and the accused pleaded not guilty.

There was a verdict of guilty of keeping a gaming house, fining the prisoner two hundred dollars and imprisoning him one year in the penitentiary. The prisoner appeals. No question is made upon the facts.

The indictment is predicated on the act of the General Assembly of 1883, chapter 230, as follows: "An act to punish as felons all parties who may engage in the keeping or conducting of halls or houses for conduct of *games* of keno, faro, three card monte and mustang," etc.

Section 1, "Be it enacted by the General Assembly of the State of Tennessee, That from and after the passage of this act, any person who shall keep a room, hall or house for the purpose of encouraging or promoting, aiding or assisting in the playing of any game of keno, faro, three card monte, mustang, red and black, high ball, roulette, twenty-one and hazard, or

who shall keep or exhibit such gaming table or ope-
rate the same, either as owner or employe, and upon
conviction shall be deemed guilty of a felony, and
shall be fined not less than two hundred dollars nor
more than five hundred dollars, and imprisonment in
the State penitentiary not less than one nor more than
three years."

Section 2, "Be it further enacted, That the change
of name of any of the games enumerated shall not
prevent the conviction of any person guilty of violating
any of the provisions of this act."

Section 3, "Be it further enacted, That all laws
and parts of laws in conflict with this act, be and
the same are hereby repealed." -

It is objected to the act, that it violates section
17 of Article 2 of the Constitution, which ordains:
"No bill shall become a law which contains more than
one subject—that subject to be expressed in the title."

To support this position many authorities of our
own as well as of sister States, are cited. We have
not had access to many of the cases in other States,
but their purport is, no doubt, correctly set forth in
the printed briefs and arguments furnished by counsel
for the accused. While these authorities are all highly
respectable, we must, in construing our own organic
and statutory laws, observe the interpretations of our
courts, if any have been given, the more especially as
the language of our Constitution differs from that used
in other States.

The question here first came before this court in
the case of *Cannon* v. *Matthes*, 8 Heis., 519, in which

Garvin *v.* The State.

Nicholson, C. J., quotes and adopts the language of Judge Cooley, that "the general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title. To require every end and means necessary or convenient for the accomplishment of this general object, to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible. The generality of a title is no objection to it so long as it is not made a cover to legislation incongruous to itself, and which by no fair intendment can be considered as having a necessary or proper connection. The Legislature must determine for itself how broad and comprehensive shall be the objects of statute, and how much particularity shall be employed in the title in defining it." The Chief Justice adds: "We concur in these general views as sound and practical, and by them the validity of the act in question must be tested."

In the *Cannon-Matthes* case, the title of the act was: "An act to fix the State tax on property." The fourth section of the act increases the tax on all privileges 50 per cent upon the existing basis. The court says: "The first inquiry is, does the act in question embrace more than one subject? As we have seen, the first section provides for raising revenue by a tax on property. The second repeals a former law as to the manner and order of paying out the revenue from the treasury; and the fourth provides for raising revenue by a tax on privileges. The general subject of the act is revenue, and each and every section has a

direct reference to the subject of revenue in its different phases. It cannot be said that there is the least incongruity among the provisions of the four sections. They have a natural, if not a necessary connection with, and dependence upon each other. Revenue is the general subject," etc. "The act is not obnoxious to the objection that it embraces more subjects than one." The Chief Justice concludes: "It is obvious, therefore, that the true rule of the construction, as fully established by the authorities is, that any provision of the act, *directly or indirectly*, relating to the subject expressed in the title and having a natural connection thereto, and not foreign thereto, should be held to be embraced in it." Holding the act constitutional and valid.

In *State* v. *Lasiter*, 9 Baxt., 586, this court, speaking through Judge McFarland, said: "The evil intended to be remedied was to prevent laws upon one subject being tacked on to a bill upon a wholly different subject, and in this way some times elude the attention of the Legislature and pass without sufficient consideration, and when passed often remain for some time undiscovered, by reason that the title of the act fails to call attention to it. This provision of the Constitution is a salutary one and should be rigidly enforced, according to its true spirit and intent, *but not so as to embarrass necessary legislation.* Legislation upon different subjects and upon subjects not indicated in the title of the act are forbidden, but it was not intended that the title should express fully everything contained in it." To the same effect in equally com-

prehensive language in *Home Insurance Company* v. *Taxing District*, is the opinion by Judge Cooper, 4 Lea, 649.

In *State* v. *Bethel*, MS. opinion by Judge Freeman in 1879, the title was: "An act to prevent the wanton and willful killing the stock of another." The first section is in accord with the title. The second section forbids the wanton killing the beast of another of less value than ten dollars, or to cut off the tongue, ear or tail, or put out the eye or otherwise dismember or disfigure or wound any beast of another, or wilfully and knowingly administer poison," etc. This was held violative of the Constitution. I now doubt the correctness of that holding, yet in that case the court said: "As a matter of course all matters fairly incident to the subject mentioned, and necessary to effectuate that end, will be included in the general terms of the title."

Now, if we try the case in hand by the rules referred to, we will find the act questioned directed against gaming houses. If the title had been simply an act to abolish gambling houses, or an act to suppress unlawful gaming, or an act to prohibit games of chance; with the body of the act in the words of this one, we do not suppose that it would be contended the act was upon a subject different to that of the caption, or that it contained more than one subject, viz, gaming houses. The words "hall, room or house," are included in the one word *house*. The terms employed in the act embrace everything necessary to the adoption of the place used for the purposes of gaming.

The implements of the several games mentioned are necessary to make the house used, a house for the purpose of encouraging, promoting, aiding or assisting in the playing of games, as is the furniture of a dwelling-house to its occupation as a dwelling. We cannot look upon or into the empty building and determine certainly the object of its erection. When, however, we see it equipped, we can. The furniture indicates the use to be made of the house. We know the store-room by its furniture, the dining-room by its, the bed-room by its, the parlor by its. Neither can be used without its appropriate appointments, and neither is complete without them. It is not a house used for a purpose until means of executing that purpose are provided to it.

The "etc" used at the end and as part of the title, may not be rejected—it has a meaning. Webster defines it "et cætera," "and others," "and so-forth." This definition applied here means, "and the rest of games," or "and other games." It gives to the members of the Legislature notice that the subject of the title is drawn out or elaborated in the body of the act, that the reformatory force of the act is not to be confined to houses or to persons keeping houses for the playing of the four games recited, but is extended to other games. It has a significant and pointed conclusion, which could not escape the attention of any member of the Legislature who had regard to his obligations and duties. It said to him in terms, other games are leveled at besides the four mentioned in the title, and you are invited to look to them. It admonished

him, the act is not made to cover a legislation incongruous in itself. By fair intendment the title had a necessary and proper connection with the act.

The sign "etc" is really more comprehensive than the provisions of the act, giving it the meaning quoted, the title reads: "An act to punish as felons all parties who may engage in the keeping or conducting of halls or houses for conduct of games of keno, faro three card monte, mustang and the rest of games," or "and other games."

It cannot be objected that the title upon the one subject is broader than the act under it. The title notified the Legislature of a thoroughly comprehensive thrust at all parties engaged in conducting gambling houses; the act confines the thrust to parties conducting houses in the playing of nine games. The record shows there are a great many other games which are played everywhere, besides those mentioned in the act, of which, however, we presume the draftsman of the act was uninformed, but which might have been embraced under the title to his act.

So far this opinion is based upon the presentation of the case at the last term. The case was then held up for further argument. It is now insisted the abreviation "etc" has no meaning at all, or at most means, "and for other purposes." Authorities are cited we cannot agree to, either. The abreviation may no longer be called such. It is thoroughly incorporated into our language, is defined by our lexicographers, and is a perfect English word in almost common use.

It cannot mean "and for other purposes," for the

reason that such definitions would include any and all
purposes, however foreign to the object of the legisla-
tion, one of the inconveniences and inconsistencies in-
tended to be remedied by the present Constitution.

By adopting the definition of Mr. Webster, "and
others," we have the title to the act to read in its
conclusion three card monte, mustang and others, mean-
ing those named and other games. The word "others"
relates to games. Thus explained the title will read,
"an act to punish as felons all parties who may en-
gage in the keeping or conducting of halls or houses
for conduct of games of keno, faro, three card monte,
mustang and other games." This embraces the five
additional games specified in the body of the act.

It is contended if ' "etc" is to have any effective
meaning, that meaning must be in this statute, "and
other similar or kindred games."

I think we might in this instance admit the re-
striction, and still the statute will stand. The five
additional games in the body of the act are in some
essentials as discovered by the record, similar or kin-
dred games to those in the title. The proof shows
that of all the games some are played alone with cards,
some with balls, some with balls and cards, some with
dice and others with dice and cards, and when we come
to examine and compare we find that the balls, cards
and dice used in the games of the title are the balls,
cards, and dice used in the games of the body of the
act, each game in the body of the act has an element
similar to one in some one of those in the title. To
some article of each outfit for the games mentioned in

the title, there is a corresponding article in one or more of the games named in the body of the act, so that we have a similarity or relationship between the games, at least in the means employed if not in the mode of playing. But under the definition of "etc" it is unnecessary to consider the question of similarity or resemblance of either instruments or mode.

It is urged that the body of the act includes another subject not expressed in the title, in this language: "Or who shall keep or exhibit such gaming table or operate the same, either as owner or employe." The objection is made upon what is insisted to be a distinct offense of keeping, exhibiting or operating a gaming table.

At first view there is seeming difficulty of reconciliation, but upon an analysis of the entire act by what is the evident intention of the Legislature, I think that difficulty disappears. The title to the act shows its purpose was to destroy gaming houses. It nor the body aims a penalty or punishment at persons who simply play at the games, but at those who keep or conduct houses, etc., for the conduct of games. If house, room, hall or place had been used instead of "table," there would have been no incongruity. Upon the occurrence of the word "table," which is employed but the one time, there is no incoherency of language and no departure from the subject expressed in the title.

It being our duty in the effort to construe statutes to arrive at the intention of the law-maker, and in doing so to take all the declaration to arrive at the

true intent and meaning, we are of opinion, that on a reading of the section to the word "table" or "such gaming table," it will be clear that reference is had to the house, room or hall in which the games were played or to be played. The language is, "such gaming table." The inquiry is, what gaming table? The answer must come from a construction of the language, and is a table of that particular character specified—a table representing the object as particularized in terms which are not mentioned: Webster's Dictionary.

So that the words "such gaming table" represents something of a particular character that has been specified or described before its use in the after clause of the sentence or paragraph, and is used as an expression of reference to an object or thing clearly described, with the purpose that the reader shall return to that description to ascertain the object referred to or represented. Mr. Webster also defines "such" as "used to represent the object indefinitely, or particularized one way or another, or one and another not there mentioned." As it seems to me, there can be no doubt that we should interpret the words to have the meaning and reference indicated. They either so mean or they mean nothing. We are not authorized to hold they mean or were intended to mean nothing. Give them their legitimate and only meaning and the act will read: "Any person who shall keep a room, hall or house for the purpose of encouraging, or who shall keep or exhibit such or operate the same," etc. We admit the expression of the act is seemingly awkward and not strictly grammatical, but it is a rule as

old as the law itself, that such imperfections do not vitiate. We know of no such rule which requires a legislatuor to be learned in the rules of composition, language or grammar, or if he is, that he shall overlook the work of the copying or engrossing clerk.

It is sufficient if the intention can be intelligently gathered from the act as a whole, whatever its phraseology may be. It appears in proof that many of the games may be played without tables, while it is customary to have them.

In Desty's Am. Crim. Law, section 102 *b*, it is said: " Setting up a gaming table consists in providing the essentials of the game, and a table in the literal sense need not exist, nor money or property be staked, but credit may be substituted, yet a game must be played and something bet." If this law is sound, and the proof shows it is, a gaming table is any place convenient for and in which the game may be played.

If "*setting up a gaming table consists in providing the essentials,*" and a real table is not necessary, then the room, the hall, the house or other place used for gaming purposes, is one of the *indispensable "essentials"* of a gaming table, and taken in connection with the games mentioned in the statute constitute the "such gaming table" mentioned in the act. To prohibit the setting up a gaming table as defined by Mr. Desty, interpreting the statute by the proof and the law cited, the draftsman employed the strictly correct term to express the object of both title and body of the act. A house, etc., could not be kept for the conduct of the prohibited games unless the tools of the games were also

kept.    A house, hall or room kept for a purpose must be supplied with the materials for that purpose. As already intimated all these things combined constitute a gaming table, or gaming house, the terms are synonomous in gaming vernacular.    Keeping, exhibiting or operating a gaming table is the "setting up of a gaming table, the keeping, operating and exhibiting a gaming house."    Such is the clear and unmistakable meaning of the Legislature.    Seeing that meaning we must define the words employed by it. The language is to be understood by its relation to its several parts.    In no other way can we arrive at the intention and meaning of the author.

As the object and purpose of the Constitution was and is to give to legislators notice of the subject of legislation upon which they are required to vote, and thereby prevent the passage of laws tacked on to the original act for wholly different and foreign purposes, it would seem that so long as the subject-matter of the body of the act is germane to that expressed in the title, there is an obedience to the mandate of the Constitution, whether the body enlarges or restricts the title.    The subject-matter being houses kept for the conduct of games, must of necessity be construed to embrace all places and conveniences whatever in and by which games are to be conducted, or which may be set apart for the conduct of games.    Whether such place be in reality a house or tent, cave, tree or open space in a lot or field, or the conveniences be real tables, cards, balls, etc., upon the principle upon which it was held under the old statutes against tippling,

that any place designated by the tippler as a drinking place became his premises in the eye of the law, however disconnected from the house in which he kept and sold.

If we can clearly see from the title that the intention of the Legislature was to destroy gambling and gaming houses, and that therefor the act was pointed at the proprietors of such houses, and nothing foreign is introduced, the title and body are consistent with the Constitution and must stand as the law.

There is nothing in the ordinance from which we may conclude the framers of the Constitution meant to restrict legislation to any sub-division of a subject inartificially expressed in the title of an act. To confine to one subject is the end aimed at, and if the title will call attention to all that may be expressed under the subject, it is sufficient. Games and gaming houses being the subject expressed in the title before us, it could not possibly fail to advertise the legislator of every thing pertaining to games and gaming houses.

That the Legislature did not mean and the title could not be understood to embrace only the games specified, it is observable that the comprehensive term 'games" and not the restrictive one, "the games" is used in the title—the title being &ast; &ast; &ast; for conduct of *games* of keno, etc. This of itself gave notice that the specifications of the body were to be more comprehensive than the title.

We are of opinion that the intention of the Legislature is sufficiently expressed in the title, that the body is conformable to that title and that both consist with the Constitution.

To hold that the many objections made to the
form and phraseology of the act are well taken, would
be to declare that a legislator must familiarize him-
self with the terms of a vice, its apparatus and uses
before he can draft a law for its prohibition or reg-
ulation.   When the legislative will is expressed upon a
matter within legislative control, the courts have no
election but to obey.

This being a positive statute creating. a new offense,
it repeals by implication all former laws creating dif-
ferent offenses for the same causes.    Affirmed.

FREEMAN, J., dissents.

Upon petition to rehear COOPER, J., said:

The statute under consideration in this case is very
inartificially drawn, so much so as to leave an open-
ing for the able and elaborate arguments which have
been submitted against its constitutionality.   It is our
duty, however, to try to ascertain the intention of the
Legislature, and effectuate that intention if possible.
Every intendment is in favor of the constitutionality
of a statute.    If a statute admits of two constructions,
one of which would render it constitutional and the
other unconstitutional, the former construction should
be adopted.    And a doubt in relation to its constitu-
tionality must be resolved in favor of the State.

The argument against the validity of this statute
rests entirely upon the assumption that the body of
the act creates several felonies, while the title only
expresses one, namely, to "engage in the keeping and

Garvin v. The State.

conducting of halls or houses for conduct of games," naming three notorious gambling games, and concluding with "etc.," the abbreviation of a word whose comprehensiveness was dwelt upon by Lord Coke. Unquestionably, the offense meant by the Legislature was the keeping of a place for the conduct of gambling games, and the enumeration of some of these games in the title, when followed by a word plainly expressive of the fact that other games were also intended, would sufficiently express the enumeration in the body of the act of all the games intended to be covered thereby. In this view, the body of the act down to the end of the enumeration of the games is in accord with the caption. For, "to keep a room, hall or house for the purpose of encouraging or promoting, aiding or assisting the playing" of games mentioned is only an amplified mode of expressing the subject of the title. Then follow the words, "or who shall keep or exhibit such gaming table, or operate the same either as owner or employe." And it may be argued, and is argued that these words create the separate offenses of keeping or exhibiting a gaming table, and operating such table either as owner or employe. But may they not also mean, and is not that the true meaning, when we read the clause as part of an entire paragraph, that the gaming table kept or operated is only "such gaming table" as is used in the conduct of the named games in the place kept for gaming, and that any person, either owner or employe, who keeps or conducts the particular place for the "conduct" or carrying on of the specified gambling games, will be guilty of the

offense?    The title is an act to punish "all parties" who may run the place.    The owner is of course included, but so is the employe if the owner chooses to stand back and employ another.    Read in this way, the subject is one, and expressed in the title.

Petition for rehearing dismissed.