State *v.* Leonard.

STATE, *ex rel., v.* LEONARD.

(*Nashville.* March 7th, 1888.)

I. COUNTY JUDGE. *Removal of. Constitutional law.*

Removal of a County Judge elected by the people cannot be effected, during his term of office, by an Act abolishing the office and transferring its powers, duties, and jurisdiction, without diminution or change, to the Chairman of the County Court, to be elected by that body. Such Act is unconstitutional.

Cited: Constitution, Art. VI., Secs. 1, 4; Acts 1885, p. 128; 1887, p. 163.

Cases cited and approved: State *v.* Glenn, 7 Heis., 486–7; State *v.* McKee, 8 Lea, 24.

Cited and distinguished: State *v.* Gaines, 2 Lea, 316; State *v.* Campbell, MS.

2. SAME. *Term of office.*

A County Judge, when duly elected under a valid law, holds his office for the constitutional term of eight years, although the statute creating the office may have prescribed a shorter term.

FROM MARSHALL.

Appeal from the Chancery Court of Marshall County. W. S. BEARDEN, Ch.

COWDEN & MARSHALL for Relator.

S. F. WILSON, P. C. SMITHSON, LEONARD & THOMPSON for Leonard.

State *v.* Leonard.

SNODGRASS, J. By an act approved March 30th, 1885, the Legislature created the office of County Judge for Marshall County. Acts 1885, p. 128.

The defendant, Leonard, was duly appointed, commissioned, and qualified to fill said office, and entered upon the discharge of its duties. Subsequently, at the August election, 1886, he was elected to the position by vote of the people of the county for the constitutional term, and was again commissioned and qualified, and continued to perform the duties of the office without objection or interference until the present bill was filed by the State, on relation of D. C. Orr, to restrain him from so acting, upon the ground that the Act, in so far as it authorized the appointment of Judge, had been repealed by an Act of the Legislature, approved March 14th, 1887, and the powers and duties of the office devolved upon a Chairman of the County Court, to be elected by the Justices thereof. Acts 1887, p. 163.

The relator has been elected to the latter position by the County Court, and consequently sought, in this proceeding to assert his authority, and to restrain defendant from interference with him or usurpation of such power.

A demurrer was overruled, the bill answered, and on final hearing the Chancellor sustained the bill, and defendant appealed.

The question, therefore, presented is whether the Legislature has power to terminate the office of a Judge elected under a constitutional law and for a

constitutional term of eight years within that term, leaving the Court with its jurisdiction in existence and unimpaired, by simply devolving the duties of the office upon another official, namely, the Chairman of the County Court.

In the Act of 1885, creating the office of County Judge, all the powers and jurisdiction vested in a Chairman of the County Court were vested in the County Judge (Section 4, page 129), and all the rights, powers, and jurisdiction that are conferred by existing law upon County Judges (Section 3, page 129).

In the passage of this law the Legislature acted under its constitutional authority to create originally, or by amendment of an existing court system, an inferior court.

The first section of Article. VI. of the State Constitution provides "that the judicial power of this State shall be vested in one Supreme Court and such Circuit, Chancery, and other inferior courts as the Legislature shall from time to time ordain and establish, in the Judges thereof, and in Justices of the Peace."

The fourth section of the same article provides, among other things, " that the Judges of such inferior courts shall be elected by the qualified voters of the district or circuit to which they are to be assigned, and that their terms of office shall be eight years."

In the first section of the Act of 1885 the term of the office is fixed at four years. But

this is certainly a misprint or clerical error, for the next section, providing for the election of the Judge after the first, fixes the period at eight years.

This, however, is an immaterial matter. The Act being otherwise valid, the Constitution would regulate the term, although a different term was intentionally fixed; and the Judge, being duly elected, would hold for eight years, the constitutional term.

The question is, Can the Legislature subsequently, and within the term, deprive him of the office by devolving its powers and duties upon another?

The Act of 1887 did not, and did not attempt, to abolish or diminish the powers and duties appertaining to the office. It simply repealed so much of the act as applied to Marshall County (another county having had a similar change made in its court system by the same act), and undertook to re-establish the office of Chairman of the County Court after the first Monday in April, 1887, and to vest in this officer "all the rights, privileges, jurisdiction, duties, and powers" pertaining to the office as established, and exercised by the County Judge.

If this legislation had merely named the defendant, and by name and title removed him from the position and given it to another, it could not have more directly accomplished the purpose actually effected if it be valid.

The Constitution, in fixing the terms of the

Judges of inferior courts, elected by the people, at eight years, intended not only to make the judiciary independent, and thereby secure to the people the corresponding consequent advantages of courts free from interference and control, and removed from all necessity of being subservient to any power in the State, but intended also to prevent constant and frequent experimenting with court systems, than which nothing could be more injurious or vexatious to the public.

It was intended when the Legislature established an inferior Court, that it should exist such a length of time as would give opportunity for mature observation and appreciation of its benefits or disadvantages, and that the extent of its duration might discourage such changes as were not the result of most mature consideration. Realizing that a change, if made so as to constitute an inferior Court, would fix that Court in the system for eight years, a Legislature would properly consider and maturely settle the question as to the propriety and desirability of such change or addition to our system; and conscious of the impropriety and the hazard of leaving the judicial department of the government at the mercy and whim of each recurring Legislature, itself elected for but two years, the framers of the Constitution wisely guarded against these evils by the section referred to. Properly construed and enforced it is effectual for that purpose. Disregarded or impaired by such interpretation as leaves it to exist in form

without force or substance, and we have all the evils and confusion of insecure, changing, and dependent courts; frequent and constant experimenting with systems provided in haste, tried in doubt, and abolished before their merits or demerits are understood. It would be a mortifying reflection that our organic law-makers intended any such result in their avowed effort to make a government of three distinct and independent departments; and still more humiliating if we were drawn to the conclusion that while they did not intend it, they had been so weak or inapt in phraseology adopted as to have accomplished it.

Neither the intent nor the language of the Constitution employed to express it fortunately bears any such construction.

When a Court, whose Judge is elected by the people of one or more counties—in district or circuit—is constituted by the Legislature, and an election had, and the officer commissioned and qualified, it is not in the power of the Legislature to take from him the powers and emoluments of office during the term of eight years by devolving these intact upon another, or otherwise.

The Court so constituted, and Judge elected in this instance, was under the authority to establish inferior courts already quoted.

The incumbent of the office was a judicial officer of this State (*State, ex rel.*, v. *Glenn.*, 7 Heis., 486–7; *State* v. *McKee*, 8 Lea, 24), and is entitled to 'the protection of the Constitution, as such,

against unauthorized legislation to deprive him of his office.

It is argued, however, that this act of removal is the same as an act abolishing a Circuit Court, with all its powers and jurisdiction, from the consequence of which it has been held by this Court a Circuit Judge would be deprived of office. *State, ex rel. Coleman,* v. *Campbell,* MS.; *State, ex rel.,* v. *Gaines,* 2 Lea, 316.

The act construed in these cases was one abolishing the Second Circuit Court of Shelby County, passed in 1875. Acts 1875, page 24. There were two Circuit Courts in Shelby County—the First and Second. As one was enough to do the business of the county, or supposed to be, the Legislature abolished this Court, leaving the entire business of both Courts to be done by the First, thereafter to be styled "The Circuit Court of Shelby County." It was held in the cases referred to that the Legislature might abolish a circuit, or Court held for a circuit or given territory, and that when the Court was abolished the office of the Judge thereof terminated.

Without desiring to be understood as assenting to the correctness of the conclusions reached in those cases (to the reasoning of which we do not subscribe), and which conclusions, we may remark in passing, were reached by a divided Court, and against the weight of many opinions in other States, it is sufficient to say that the case here presents no such question as that determined there.

The Act of 1875 construed had abolished the Court. It did not leave the Court with all its powers, jurisdiction, rights, and privileges intact, and devolve them upon another, as in this case.

Here the Court was left as it existed, except the change made in its official head. He was simply removed by the operation of the act, if it could take effect according to its terms, and another put in his place.

It cannot be doubted that if the Legislature had said in the Act of 1875 (as in the Act now being considered) that the office of Judge of the Second Circuit Court should be abolished, and that the Court should remain with like jurisdiction and duties, but that these should be exercised by another officer, leaving the First Circuit Court also existing with its original jurisdiction and duties only, that such act would have been declared void. Nor can it be doubted that if the Legislature should now declare that the office of Judge of a given circuit is hereby abolished, leaving the circuit and its court machinery as it is, except the removal of the presiding Judge, such Act would be void.

If this were not true, the Legislature, at its next or any succeeding session, might pass a law setting out the Circuits and Chancery Divisions by number, and declaring the office of Judge of each abolished.

It is no argument in answer to this to say that the Legislature *will not* do this. It is not a question of what they *will* do or *ought* to do that

State *v.* Leonard.

we are now considering. It is a question of constitutional power, of what it *can* do. The question as to how much power is granted or restraint imposed cannot be determined on the probability or improbability of its exercise.

If it can abolish in this way the office of County Judge, it can abolish the office of any inferior Judge, as all are alike protected or not protected by the clause of the Constitution referred to.

For the honor of the framers of the Constitution, the best interest of our people, the independence of the judiciary, and the security and order of our court system against rash and constant experiments of legislation, it affords us much satisfaction to give the Constitution its plain, natural, and unobscure effect to invalidate legislation of this character, and to be able to say that nothing as yet decided by our Court stands as an obstacle in the way of our doing so. But if there were, it would afford us pleasure to remove it.

The decree is reversed, and bill dismissed with costs.