STATE, *ex rel.* TYLER, *v.* KING.

(*Nashville.* March 20, 1900.)

1. "JUDICIAL REFORM ACTS." *Affecting Montgomery County, constitutional and valid.*

Acts 1899, Ch. 302, which repeals the statutes that had created special Chancery and Criminal Courts for Montgomery County, and had conferred jurisdiction upon the County Judge to hold same, and had given him a salary out of the State treasury for that service, is constitutional and valid, and has the effect to abolish said special Courts, and to terminate the jurisdiction and salary of the County Judge as regards said Courts, but not as County Judge proper, although no express provision was made for the holding thereafter of the Chancery Courts of said county. (*Post, pp. 161–163.*)

Acts construed: Acts 1899, Ch. 302; Acts 1870, Ch. 115; Acts 1895, Ch. 13.

Cases cited: Judge's Cases, 102 Tenn., 509; Halsey Case, 2 Lea, 316.

2. STATUTES. *Repeal and revivor.*

Upon express repeal of a statute that had itself repealed a former statute by implication, the latter statute is revived and becomes operative. Hence, upon repeal by Act of 1899 of Act of 1895, providing for a special Chancery Court for Montgomery County, the pre-existing statute, relating to the Chancery Court of that county, repealed by implication, or, rather, suspended by the Act of 1895, was revived, in the absence of other more recent provisions for said Court. (*Post, pp. 163–168.*)

Constitution construed: Art. II., Sec. 17.

Acts construed: Acts 1899, Ch. 302; Acts 1895, Ch. 13.

Cases cited: Home Ins. Co. *v.* Taxing Dist., 4 Lea, 644; Zickler *v.* Bank, *post, p.* —.

FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

State, *ex rel.* Tyler, *v.* King.

HENRY SCALES and BENES RICE for Tyler.

ATTORNEY-GENERAL PICKLE for King.

*E. M. HEARN, Sp. J. In this case a petition was filed in the name of the State on the relation of Judge C. W. Tyler, of Montgomery County, in the Chancery Court of Davidson County, against Theodore F. King, Comptroller of the State, asking for a writ of mandamus to compel the defendant to issue a warrant on the Treasurer to pay the relator the sum of three hundred and twelve dollars and fifty cents, which he alleged was due him as a part of his salary as a judicial officer of the State. The petition was demurred to by the Attorney-general for the State, who appeared on behalf of the State. The demurrer was sustained by the Chancellor, and the petition dismissed with cost. From this decree an appeal was taken to this Court, and errors assigned. The cause was referred to the Court of Chancery Appeals, and that Court has made and reported its findings in the case, and affirmed the decree of the Chancellor. From this decision the relator has appealed, and assigned errors.

The following are the material averments of the petition, as correctly summarized by the Court of Chancery Appeals.

*First*—That the Legislature of Tennessee, in 1858,

---

*Appointed to sit in this case because of the sickness of Judge McAlister and the incompetency of Sp. J. Grigsby.—REPORTER.

passed an Act which provided that the county of Montgomery, with other counties not necessary to be mentioned, should elect a County Judge, who should hold his office for eight years.

*Second*—That this Act was carried into the Code of 1858, Sec. 316, and so far as Montgomery County is concerned has been in force ever since its passage.

*Third*—That in July, 1870, the Legislature passed an Act entitled "An Act to establish a Criminal Court in the county of Montgomery," and, under this Act, it was made the duty of the County Judge of Montgomery County to hold said Court, and that the salary of the County Judge was to be the same as that of Circuit Judges and Chancellors of the State, but his salary was to be paid entirely out of the county treasury.

*Fourth*—That in 1873 the Legislature passed an Act providing that the County Judge of Montgomery County, who held the Criminal Court of said county, should receive a salary of $1,800 per annum, to be paid from the State treasury.

*Fifth*—That in the general redistricting bill by the Legislature of 1885, the Act of 1873 was amended so as to give the Judge twelve hundred and fifty dollars instead of eighteen hundred dollars per annum.

*Sixth*—That in 1895 the Legislature passed an Act detaching Montgomery County from the eighth

State, *ex rel.* Tyler, *v.* King.

chancery division of the State and making it the duty of the County Judge of Montgomery County to hold the Chancery Court of said county.

*Seventh*—That the Legislature, in 1899 (Acts of 1899, Chap. 302), passed an Act which repealed the Act of 1870 creating the Criminal Court of Montgomery County, and also repealed the Act of 1895, creating a separate Chancery Court for said county.

*Eighth*—That the Legislature passed another Act in 1899 (Chap. 409), which provided that the Judge of the Tenth Judicial Circuit of the State should hold the Criminal Court of Montgomery County.

*Ninth*—In 1899 another bill was introduced into the Legislature, making it the duty of the Chancellor of the Eighth Chancery Division of the State to hold the Chancery Court of Montgomery County, but it is alleged that this bill did not pass, and the petition asks that the journals of the House and Senate of 1899 be taken as a part of the petition.

*Tenth*—The relator was elected County and Criminal Judge of Montgomry County; served for eight years, and regularly drew his salary of $1,250 per annum; that he was again elected in 1894, and commissioned by the Governor as Judge for the ensuing eight years, and that he did serve continuously since his election until the passage of the Act of 1899 above mentioned.

*Eleventh*—The relator drew his salary from the State treasury up to May 27, 1899, and since this time the Comptroller has refused to issue him a warrant, although he was requested to do so by relator. The Comptroller refused to issue a warrant to the relator upon two grounds, first, that the Legislature made no appropriation to pay the relator; second, that the office of relator, as Chancellor and Criminal Judge, was abolished, and that he was not entitled to pay from the State.

With respect to the first ground of refusal, it is alleged in the petition that the Acts of 1899 were first published without containing an appropriation to pay Judges, but that this was claimed to have been an error of the compiler of the Acts, and to meet this an amendatory slip was pasted in the Acts subsequently sent out. It is averred, however, that the Acts as amended by this slip make no appropriation to pay salaries of the Circuit Judges of the State, but that notwithstanding this fact, respondent, as Comptroller, draws his warrants regularly to pay them. The relator avers that he is of opinion that the Comptroller is acting properly in paying these Judges, but complains that he refuses to pay him.

As to the second ground of refusal, it is alleged that relator's office has not been abolished, and that he is still a member of the State judiciary, and as such is daily in discharge of his duties.

State, *ex rel.* Tyler, *v.* King.

It is further alleged that when the last Legislature assembled relator was holding and presiding over these Courts, viz.: the County Court of Montgomery County and the Criminal and Chancery Courts of said county; that the Acts cited and passed by this Legislature deprived him of criminal jurisdiction in the county, and transferred it to the Judge of the Tenth Judicial Circuit; that the Legislature repealed the Act giving him chancery jurisdiction, but failed to confer the jurisdiction on any other Judge or Chancellor. His right to hold the County Court was in no way interfered with.

The case is now before this Court upon errors assigned to the action of the Court of Chancery Appeals. The first assignment is as follows:

"The Court erred in holding that the office of a Judge of one of the inferior Courts of the State can be partially abolished, or his compensation diminished, while he remains in office. As long as he is Judge of such Court, he is entitled to full salary; when he ceases from any cause to be a Judge, he is entitled to no salary."

In regard to the first assignment of error, we are of opinion that the Acts of the Legislature conferring criminal and chancery jurisdiction upon the relator as the County Judge of Montgomery County, or authorizing him and giving him the

State, *ex rel.* Tyler, *v.* King.

power to hold said two Courts, were independent Acts, and not amendatory at all of the Act creating the office of County Judge, or in any way changing his official character as such. His office as Chancellor and Criminal Judge was abolished. He was no longer a Judge, so far as these two Courts were concerned. His jurisdiction had been taken away and given to other Judges. That the Legislature had the right to abolish these Courts, or to transfer them into the districts and circuits of other Judges, with all their dockets and Court papers, is not now an open question in this State. The *Judge's cases,* reported in 102 Tenn., 509.

In these decisions the Act of 1899 was held to be constitutional, and under this Act relator's office as Chancellor and Criminal Judge of Montgomery County, was abolished, and his salary passed with his right to hold the office; and it follows, therefore, that he would have no right to call upon the State for pay for filling an office which did not exist. See *Halsey's case,* reported in 2 Lea, page 316.

The fact that the relator still remains County Judge of Montgomery County, under the Act of 1857-8, will not help him in his action in this case. The Legislature has not, by any of these various Acts above cited, attempted in any way to interfere with him as County Judge. The Legislature, in our opinion, did not intend to do so, and each Act conferring jurisdiction on rela-

tor was a separate and independent Act, and the provision for $1,250 per annum, made in the extra session of Acts 1885, Ch. 20, Sec. 2, was simply to pay him for what services he rendered the State while he held said two Courts. The repealing Act of 1899 only ousted the relator of criminal and chancery jurisdiction, and left him where he was at first, to wit: County Judge of Montgomery County.

The State has nothing to do with his salary as County Judge. For that he must look to the county of Montgomery, just as he did before he was given authority to hold said Chancery and Criminal Courts.

The relator is seeking by mandamus to compel the Comptroller of the State to issue him a warrant for $312.50, to pay him for a quarter's salary. He has no right to this pay for holding the Chancery and Criminal Courts, because, as we have already seen, his authority to hold them has been abolished. Secondly, he has no right to such claim against the State as a part of his salary by virtue of his being County Judge of Montgomery County, because the State has not, by any Act of the Legislature, authorized the Comptroller to pay the County Judge of Montgomery County, as such, any salary.

The second assignment of error is as follows:

"The Court erred in holding that the repeal of the Act of 1895, establishing a separate Chancery

Court for Montgomery County, operated as a revivor of a former law making different provision for the holding of the said Court; or, if the doctrine of revivor was not applicable, then said repealing Act would be valid, though its effect might be to deprive the people of Montgomery County of the benefits of a Chancery Court. The doctrine of revivor is no longer applicable in this State (Constitution, Art. 2, Sec. 17), and while each county in the State may not be entitled to a separate Chancery Court, the people of each county are entitled to the benefit of the Chancery Court system.

We do not understand the Court of Chancery Appeals to have held in terms, as contended in this assignment of error.

The real point raised by this assignment of error is that the Legislature took away from the County Judge of Montgomery County his chancery jurisdiction, and failed to confer it upon another, or make other provision for the holding of a Chancery Court for said county, and this, it is contended, cannot be done, as the county would thereby be deprived of the benefit of the Chancery Court system. It is clear that if the Act has any such effect it would be unconstitutional and void. But the question is, Does the Act bring about any such results? We are of opinion that it does not. The Act of 1899, Chap. 302, repeals, in express terms, the Act of 1895, Chap.

13, the caption of which is as follows: "An Act to detach the county of Montgomery from the Eighth Chancery Division of Tennessee, and to require the Judge of the County and Criminal Court of Montgomery County to hold also the Chancery Court of said county."

Said Act reads as follows:

"Sec. 1. *Be it enacted by the General Assembly of the State of Tennessee,* That the county of Montgomery be, and hereby is, detached from the Eighth Chancery Division of the State of Tennessee, and that hereafter the Judge of the County and Criminal Courts of Montgomery County shall hold also the Chancery Court of the said county; *Provided,* That said Judge shall not receive any additional salary from the State.

"Sec. 2. *Be it further enacted,* That laws and parts of laws in conflict with this Act be, and the same are hereby, repealed, and that this Act take effect from and after its passage, the public welfare requiring it."

Art. 2, Sec. 17, of the Constitution of the State of Tennessee (1870), provides as follows:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All Acts which repeal, revive, or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived, or amended."

In view of this provision of the Constitution, it is contended that the doctrine of statutory revivor no longer obtains in this State, and that therefore the Act of 1899, repealing the Act of 1895, does not revive the original law placing Montgomery County in the Eighth Chancery Division; that, consequently, that county is left unprovided for, since the Legislature failed, or refused, to pass any other Act providing her with Chancery Court privileges.

Without going into a general discussion of the doctrine of revivor, because not necessary for a proper and correct determination of the case before us, we simply say that the Act of 1895 detaching Montgomery County from the Eighth Chancery Division, and the Act of 1899, repealing same, do not fall within the constitutional provision requiring that Acts repealing, reviving, or amending Acts shall specify in their caption, or otherwise, the law repealed, revived, or amended, for the reason that the Act of 1895 was an Act which merely repealed, by implication, the original law placing Montgomery County in the Eighth Chancery Division. Whatever may be the law as to the revival of laws which have been expressly repealed by repealing the repealing Act, it has been held in this State, and we think upon sound principle, that when a law has been repealed by implication merely, the repeal of the Act which

State, *ex rel.* Tyler, *v.* King.

thus impliedly repeals the former law, revives such former law, and this for the reason that such former law was never, in fact, repealed, but its operation merely suspended or interrupted by the adoption of another rule.

In the case of the *Home Insurance Co.* v. *Taxing District,* 4 Lea, page 644, Judge Cooper says:

"Strictly speaking, a new statute does not repeal an old statute, however inconsistent with it. It is a mere form of expressing the result to say that one repeals the other by implication. The prior Act is not repealed, but rendered inoperative And this is made plain by the fact that a direct repeal of the latter Act, without any reference to the former, will, by a rule of the common law, give efficacy to the former. It was precisely because the old Act never was repealed that it thereby became operative. It is a convenient, though inaccurate, use of language to say that the new law repeals the old, and that the repeal of the new law revives the old. More properly, the new Act is an obstacle to the operation of the old Act, which obstacle is removed by its repeal."

In concluding the opinion of the Court in that case, the learned Judge used the following language:

"That the constitutional provision under consideration (Art. 2, Sec. 17, of the Constitution of 1870) does not apply to repeals by implication,

State, *ex rel.* Tyler, *v.* King.

seems to be sustained by reason, as it certainly is by authority."

The same doctrine was announced at a former day of the present term in the case of *Zickler* v. *Union Bank and Trust Co.,* post, p. ———.

The holding of the Court in these cases is conclusive of the law in this one, since the Act of 1895 did nothing more than repeal, by implication, the Act which placed Montgomery County in the Eighth Chancery Division, and the Act of 1899, taking that "obstacle" out of the way, revived said former Act, or, more strictly speaking, permitted it to resume its operation.

We therefore hold that the Act which originally placed Montgomery County in the Eighth Chancery Division is now in full force and effect, never having been expressly repealed, and the Act which suspended its operation having been taken out of the way by the Act of 1899. It therefore results that Montgomery County is now in the Eighth Chancery Division of Tennessee, and it is, and will be the duty of the Chancellor of that division to hold the Chancery Court of the said county until such time as the Legislature may, by law, place it in some other division, or make other provision for the holding of its Chancery Court. The decree of the Court of Chancery Appeals is therefore affirmed, and the relator and his sureties on his bond, will pay the costs of this proceeding.