## Z. A. ROBERTSON v. T. W. FREEMAN et al.

Eastern Section. July 27, 1929.

Petition for Certiorari denied by Supreme Court, December 21, 1929.

Cox & Taylor, of Johnson City, for appellant.
Sells, Simmonds & Bowman, of Johnson City, for appellees.

DeWITT, J. Z. A. Robertson, a real estate agent, doing business under the trade name of Globe Realty & Auction Company, brought this suit against T. W. Freeman, his wife and their son, to recover a sum alleged to be due him as commission upon the sale of a farm of 118 acres in Carter county. In an amendment to his bill the complainant averred that he had complied with all laws pertaining to real estate agents, that he was a duly licensed and authorized real estate agent, had paid all privilege and license taxes provided by law.

The defendants denied any liability under the facts, and averred that complainant was not entitled to recover because he had not complied with the requirements of chapter 182 of the Acts of 1919 and was not a duly licensed real estate salesman or agent on or subsequent to August 13, 1927, when defendant T. W. Freeman by a paper writing appointed complainant his exclusive agent to sell the property, the agency to continue for four months and thereafter until terminated by Freeman giving to Robertson as agent ten days notice in writing.

It was shown, and not disputed, that complainant had paid the privilege tax in both Carter county and Washington county imposed upon real estate agents, under the Revenue Act then in force.

The Chancellor held that the defenses to the merits did not appeal to him and were it not for his holding that chapter 182 of the Acts of 1919 was still in force and that complainant had not complied with it and was therefore not a duly licensed real estate agent and for this reason was not entitled to recover, the cause would have been referred to the Master to ascertain the amount due complainant under said contract, or by reason of defendants' breach thereof. He therefore dismissed the bill. The complainant has appealed.

The defendants having failed to file any assignments of error, we are precluded from reviewing the findings that upon the merits

the complainant would be entitled to a decree against the defendants. The rule is that matters not contained in assignment of errors by an appeal are not rendered reviewable by general discussion or even particular objection made later in the general argument. Taylor v. Elgin, 140 Tenn., 602, 205 S. W., 428.

If chapter 182 of the Acts of 1919 (Shannon's Code Supplement, sections 990a1-990a16), has not been repealed, then complainant is without any right to recover, for section 5 of said Act provides:

> "That no person, persons, firm or corporation doing or carrying on or engaged in the business of a real estate agent or real estate salesman, shall bring or maintain any action in the courts of this State for the collection of compensation for the negotiation of a purchase, sale, mortgage, lease or rental of real estate, or any interests therein, without alleging and proving that he, they or it was a duly licensed real estate agent or real estate salesman at the time the alleged cause of action arose."

The Act provided that no person, firm or corporation should engage in the business of a real estate agent or salesman without first obtaining a license from the clerk of the county court, giving a bond to the State of Tennessee with two sureties, upon an application bearing the signed recommendation of at least ten freeholders of the county that the applicant was honest, truthful and of good moral character. It further provided that with an application for license of a real estate agent, the sum of $25 should be tendered, and with an application for license to do business as a real estate salesman the sum of $20 should be tendered, to the clerk for the use and benefit of the State of Tennessee. This Act was held constitutional in the case of Davis v. Hailey, 143 Tenn., 247, 227 S. W., 1021; and in Johnson v. Baker, 149 Tenn., 613, 259 S. W., 909, the requirement of a recommendation of ten freeholders in writing as aforesaid, was held to be mandatory. Chapter 98 of the Acts of 1921 purported to cover the entire subject covered by chapter 182 of the Acts of 1919, and to be a more nearly complete system of legislation defining, regulating and licensing real estate brokers and real estate salesmen. It created a commission, to be appointed by the Governor to act instead of county court clerks in receiving and granting or refusing applications for licenses as such brokers and salesmen. It provided for applications to be accompanied with the written endorsements of two real estate owners, for fees of $20 for a broker and $10 for a salesman, and for the filing of a bond for $1000 with two sureties. It is not necessary here to set forth all the provisions of said Act, nor to point out all of the differences in the details of the two acts.

It is clear that the said Act of 1921 operated as a repeal of the said Act of 1919. In Haley v. State, 156 Tenn., 85, 299 S. W., 799, it is said "No principle of law is better settled than that a statute purporting to cover an entire subject repeals all former statutes upon the same subject, either with or without a repealing clause, and notwithstanding it may omit earlier provisions of the earlier statutes"—citing many Tennessee decisions, also 25 R. C. L., 915, 930.

Section 21 of said Act of 1921 provides, "That all laws or parts of laws in conflict with this Act, be and the same are hereby repealed." There is no express repeal of the Act of 1919, but the rule above quoted is applicable and the Act of 1919 was so repealed.

The question then arises, was the Act of 1919 revived in chapter 3 of the Acts of 1925, expressly repealing said chapter 98 of the Public Acts of 1921?

This Act contained no reference to the Act of 1919. It simply repealed in precise words the Act of 1921. In 36 Cyc., 1099 it is said in the text:

"It is a common-law rule of statutory construction that when a repealing statute is itself repealed, the first statute is revived, without any formal words for that purpose, in the absence of a contrary intention expressly declared, or necessarily to be implied from the 'enactment of provisions conflicting with those of the law which would otherwise be revived; and it matters not whether the repeal in either case be by express language or by implication."

This rule has been applied by our Supreme Court in the following cases: State v. King, 104 Tenn., 156, 57 S. W., 150; Zickler v. Union Bank & Trust Co., 104 Tenn., 277, 57 S. W., 341; Home Insurance Co. v. Taxing District, 4 Lea., 644; State v. Pearson, 137 Tenn., 253, 192 S. W., 164.

In Home Insurance Company v. Taxing District, supra, it was said by Mr. Justice Cooper, "Strictly speaking, a new statute does not repeal an old statute however inconsistent with it. It is a mere form for expressing the result to say that the one repeals the other by implication. The prior act is not repealed but rendered inoperative, and this is made plain by the fact that a direct repeal of the latter act, without any reference to the former, will, by a rule of the common law, give efficacy to the former. It was precisely because the old act never was repealed that it thereby became operative. It is a convenient, though inaccurate use of language to say, that the new law repeals the old, and that the repeal of the new law revives the old. More properly the new act is an obstacle to the operation of the old act, which obstacle is removed by its passage."

This language was quoted with approval by the Supreme Court in Zickler v. Union Bank & Trust Company, supra, and State ex rel. v. King, supra, and in State v. Pearson, supra.

In 25 R. C. L., 933, a rule, relied on for appellant, is stated in the text as follows:

> "Where a repealing statute consists of a revision or substitute for the original, as where it amends the former statute by making it read as set forth therein at length, and the object and purpose of both are substantially the same, no legislative change of purpose is indicated, and the subsequent repeal of the revisory act does not work a revival of the first act."

This rule is based upon the intent of the Legislature, for the intent of the lawmaker is the law. The intent of a repeal of an act repealing by implication a prior act is presumed to be to reinstate in full force the original act; and to control this presumption a contrary intention must expressly appear. 36 Cyc., 1099. A fortiori is the intent to revive manifest when the object and purpose of the acts is not the same. The act of 1921, while fundamentally seeking to accomplish the same purpose—the licensing only of honest and responsible persons—provided a very different machinery to effectuate it; and there is nothing to indicate that in repealing it the General Assembly did not intend to maintain the fundamental purpose and yet return to the original method of carrying it out.

It is additionally argued that the said Act of 1919 was repealed by the provisions of chapter 89 of the Acts of 1927 (the General Revenue Act) imposing privilege taxes upon real estate agents and salesmen. These are the ordinary taxes upon the "vocation, occupation or business" of such persons. Such provisions were contained in chapter 134 of the Acts of 1919 (General Revenue Act). Chapter 182 and chapter 134 of the Acts of 1919 were passed and approved on the same days, respectively. These Acts, chapter 182 of the Acts of 1919 and the Revenue Acts, were passed for different purposes—the one to provide for qualifying persons to engage in the business so as to protect the public against improper practices; the others to obtain revenue for the State. It is manifest that the General Assembly intended that both acts should be the law. Zickler v. Union Bank & Trust Company, supra, is not authority to the contrary. In that case the court was dealing with the single subject of collateral inheritance tax; and it held that chapter 174 of the Acts of 1893, a full and complete enactment upon the subject, was repealed by the Revenue Act of that year in only one particular point, and by implication because of obvious inconsistency. Between chapter 182 of the Acts of 1919 and the general revenue acts there is no inconsistency.

For these reasons we hold that chapter 182 of the Acts of 1919 is still the law, and that complainant was subject to its provisions. He further insists however, that he did qualify under these provisions. The Chancellor held adversely to this claim.

The complainant testified that upon the passage of the Act of 1919 he tendered to the county court clerk of Washington county an application for license as a real estate agent under said act, together with the required recommendations of ten freeholders, and a bond for one thousand dollars signed by himself as principal and George Keys and James A. Pouder as sureties, and that he paid to the clerk the fee required by the Act. He could not remember the names of any of the ten freeholders. He testified that a license was issued to him, but was lost because of four or five removals of his office, and it could not be found after diligent search.

Mr. Pouder testified that in 1919 complainant talked with him about the necessity of making a bond under the Act, but could not remember what he wanted him to do. Mr. Keys testified that he signed such a bond for complainant, and that he was under the impression that Mr. Pouder signed it. The transactions concerning which these witnesses testified had occurred, if at all, about nine years before they gave their testimony.

Complainant made an unsuccessful endeavor to produce a certified copy of the license alleged to have been thus issued to him.

It appears that the county court clerk maintains an office, in charge of a deputy clerk, at Johnson City, in addition to his principal office in the court house at Jonesboro. The records of privilege taxes and license in the civil district in which Johnson City is situated are kept in the Johnson City office.

If the complainant did obtain the license, after filing the bond and recommendations of ten freeholders and paying the fee, he is entitled to a recovery in this cause. The burden was upon him to show these things. He must show (1) that the documents did exist as claimed; (2) that diligent search has been made for them. If then they could not be found, he might prove their existence and contents by the secondary method of parol evidence. Such evidence must be cogent and satisfactory. 2 Jones on Evidence (2 Ed.), sec. 814; 22 C. J., pp. 1034, 1042, 1046; King v. Cox, 126 Tenn., 553, 151 S. W., 58; Rhea v. McCorkle, 11 Heisk., 451; Pharis v. Lambert, 1 Sneed, 228; Oliver v. Persons, 30 Ga., 371; 76 Am. Dec., 657. In Vaulx v. Merriwether, 2 Sneed, 683, it was said, as to proving a lost deed:

> "The general rule on the subject is that before parol evidence of the contents of a writing can be admitted, upon the ground of its loss, the party must show that he has, with reasonable diligence, resorted to and exhausted all the sources of

information and means of discovery which were accessible to him, and the nature of the case would naturally suggest.''

Two deputy county clerks, Messrs. Moore and Wallin, employed in the Johnson City office, testified that they made a search in that office. Mr. Moore's search extended back only to the year 1920. He found no bond or endorsement by ten freeholders or copy of license under the Act of 1919, to the complainant. Mr. Wallin testified that he searched for these papers but did not find any of them. He said that complainant filed a bond for one thousand dollars about three or four years prior to his giving testimony, which was in June, 1928. He succeeded M. B. Martin as deputy clerk. Martin took some of the records away from this office and filed them in the Clerk and Master's office, but Mr. Wallin testified that they did not include any of the real estate bonds.

The county court clerk, Mr. Smith, testified that he made a search in his office at Jonesboro for any bond, application for license, certificate signed by ten freeholders as to good moral character of complainant, but did not find any such papers. He admitted that he spent only fifteen or twenty minutes in making the search and that it would take considerable time to examine all of the papers in his office and in the basement of the court house, where very many were stored. He said that there was no system of filing such papers and it would be necessary to look through all the papers in order to find the papers in question if they exist. It therefore appears that a very thorough search was not made of the papers in the office of the county court clerk, excepting that the papers in the Johnson City office appear to have been searched with reasonable thoroughness. The general rule as to extent of such search necessary, is stated in 22 C. J., 1057 as follows: ''The rule of diligence with respect to search for a missing document, does not require the exploration of every place where the document might possibly be, but it is sufficient to show that a careful search has been made where the document was last known to be, or where it would be likely to be found.'' It is also stated as a rule on page 1056 as follows, ''Where the purpose for which an instrument was executed has been accomplished, so that the instrument is functus officio, and the necessity or reason for preserving no longer exists, very slight evidence of search will suffice.'' If the license was issued the clerk might presume that the licensee would preserve it and it would not be necessary to keep in a convenient or accessible place the papers upon which it was based; but this would not apply to the bond, for there might at any time be a demand of recourse to the bond by some party having a claim thereon.

We are of the opinion that the searches made were not sufficient to satisfy the requirements for the consideration of secondary or

parol evidence as to the existence and contents of the document in question. There is no evidence that any of the records of the county court clerk's office pertaining to such matters had been destroyed. If these papers were filed they are presumably somewhere in one of the offices of the county court clerk. Nor do we think that the complainant, sincere as he appears to be, has carried the burden of proving by cogent and satisfactory evidence that he actually filed with the clerk all the necessary papers and paid the fee. This court has reluctantly come to these conclusions because upon the merits the complainant would be entitled to a recovery; but we are compelled to apply the provisions of the statute, for they are mandatory.

It results therefore that all of the assignments of error must be overruled and the decree of the Chancellor affirmed and it will be so ordered. The costs of the appeal will be adjudged against the complainant and the surety on his appeal bond.

Faw, P. J., and Portrum, J., concur.