287 S.W.2d 26 (1955)
Harold DUNCAN
v.
RHEA COUNTY.
Supreme Court of Tennessee.
December 9, 1955.
Rehearing Overruled February 3, 1956.
*27 Walter S. Michael, Dayton, for plaintiff in error.
O.W. McKenzie, Dayton, for defendant in error.
SWEPSTON, Justice.
The only question involved in this case is the constitutionality of Chapter 570 of the Private Acts of 1953, which is a simple repealing Act undertaking to repeal Chapter 868 of the Acts of 1949, which established a Court of General Sessions for Rhea County, Tennessee.
The original bill was filed in this cause by Harold Duncan seeking a declaratory judgment adjudging his right as the incumbent Judge of said General Sessions Court for Rhea County to continue in and hold said office until September 1, 1958. Pursuant to that end the bill charges that said Chapter 570 of the Acts of 1953 is unconstitutional for the following reasons: That (1) it violates Art. I, Section 8, of the Law of the Land provision; (2) Art. VI, Section 1, the Judicial power provision; (3) Art. VI, Section 4, providing for the election of Judges and among other things, fixing the term at eight years; (4) Art. VI, Section 6, providing for the removal of Judges and Attorneys for the State; (5) Art. VI, Section 7, prohibiting the increase or decrease of a Judge's compensation for the term during which they are elected.
The bill alleged that said Chapter 868, Private Acts of 1949, which created the General Sessions Court for Rhea County prescribed the jurisdiction of said Court and provided that the jurisdiction powers and authority shall be co-extensive with Rhea County and shall be the same as provided by law for Justices of the Peace; that the Court have original jurisdiction of all cases coming within the terms of Part III, Title 8, of the 1932 Code of Tennessee, Sections 10269-10309, as amended, the same being the Juvenile Court; the Court be vested with and shall exercise the judicial authority conferred upon the County Judge or the Chairman of Rhea County, as set out in Code sections of the Code of Tennessee of 1932, and the County Judge or chairman was divested of all such jurisdiction and authority except in his capacity as fiscal head and agent of the county, it being left to the County Judge or Chairman to preside over the County Court and to look after the county finances and general operation of the county business.
It is averred that the effect of Chapter 570 of the Acts of 1953, repealing said General Sessions Act undertakes to abolish petitioner's term of office and restore the duties of this office to the Chairman of the County Court. It is further alleged that the office has not been abolished but is a means of legislating the petitioner out of office, changing the name of the office and leaving his duties intact. Petitioner alleges that he has a vested property right in his term as Judge for 8 years and that said repealing Act, therefore, violates the Law of the Land provision of the Constitution above referred to.
Rhea County filed a lengthy demurrer to the bill which demurrer for the purpose of this opinion was in substance to the effect that said repealing Act was a perfectly valid Act, so that the office of General Sessions Judge for Rhea County was non-existent after September 1, 1954, the effective date of the Act; that of a valid law complainant cannot successfully complain or rely upon any alleged plan or scheme to legislate him out of office; nor can he claim any property right or compensation or salary for any further services in an office that has been abolished; that upon the effective repeal of said General Sessions Act, the functions of a General Sessions Court for Rhea County were by the general law redistributed to the sources from which they had come, to wit: that the existing regular chairman of the County Court, the existing regularly elected Justices of the Peace, and to all others without *28 any further Acts of the Legislature to create any offices or officers.
The trial court held that said repealing Act was unconstitutional for the reason that it falls within the principles announced in State v. Leonard, 86 Tenn. 485, 7 S.W. 453, and State ex rel. v. Link, 172 Tenn. 258, 111 S.W. 2d 1024, on the theory particularly that there could be only one General Sessions Court Judge for Rhea County.
Counsel have favored the Court with splendid briefs and there is a temptation on the part of the writer to refer in detail to a great deal that is said therein. However, to do so would unduly extend this opinion.
We think it clear that the facts of those cases have no application to the instant case. Judge Cook's opinion, however, recognizes that unless a Court or a system of Courts, such as the Circuit and Chancery Courts, is protected by the Constitution, the Legislature may redistribute the business of the Courts for the purpose of economy and efficiency, and when such a Court is abolished it operates to vacate the office of the Judge who presided over the same. General Sessions Courts are not mentioned in the Constitution, but are simply such an inferior Court as the Legislature has the power to create or to abolish. There not only can be but there are more than one General Sessions Court Judge presiding over two divisions of the Court, Dayton Division and Spring City Division, but at any time the Legislature saw fit it could create a second General Sessions judgeship. On the other hand, there can only be one County Judge or one Chairman of the County Court for any one county. The distinction is pointed out by Judge Cook in his quotation from the Judges Cases (McCully v. State, 102 Tenn. 509, 53 S.W. 134, 46 L.R.A. 567) wherein it was said [172 Tenn. 258, 111 S.W.2d 1025]:
"`The Leonard case [State v. Leonard, 86 Tenn. 485, 7 S.W. 453] applies only to a county judge, where only one can exist in a county, and where his functions and duties cannot be devolved upon another, and is different from cases involving circuit, chancery, or other judicial officers, who preside over a system of courts common to the whole state. In the former class of cases the jurisdiction and business of the abolished court must necessarily go to a judge created especially by the legislature to receive them. In the latter class judges are judges for the state at large, and the transfer is not of jurisdiction but of business, not to a judge specially created, but to a judge already elected by the people, and clothed with authority and jurisdiction to act.'"
In the instant case the repealing Act does nothing but repeal the General Sessions Act. It does not purport to devolve the duties of the General Sessions Judge upon any other official. It does not undertake to create any new office or officers. It simply leaves it to the general law by becoming again operative to restore to those officers and Courts that which had been taken from them by said General Sessions Act. The case most nearly analogous to the present case is State ex rel. Tyler v. King, 104 Tenn. 156, 57 S.W. 150. The two syllabi cover the case. The first one reads: "Acts of 1899, Ch. 302, which repeals the statutes that had created special Chancery and Criminal Courts for Montgomery County, and had conferred jurisdiction upon the County Judge to hold same, and had given him a salary out of the State Treasury for that service, is constitutional and valid, and has the effect to abolish said special Courts, and to terminate the jurisdiction and salary of the County Judge as regards said Courts, but not as County Judge proper, although no express provision was made for the holding thereafter of the Chancery Courts of said county."
The second syllabus reads: "Upon express repeal of a statute that had itself repealed a former statute by implication, the latter statute is revived and becomes operative. Hence, upon repeal by Act of 1899 of Act of 1895, providing for a special Chancery Court for Montgomery County, the pre-existing statute, relating to the *29 Chancery Court of that county, repealed by implication, or, rather, suspended by the Act of 1895, was revived, in the absence of other more recent provisions for said Court."
As to the principle of repeal and revival see cases cited on the question of repeal by implication and revival in Robertson v. Freeman, 10 Tenn.App. 207, 210. The opinion quotes from Home Ins. Co. v. Taxing District, 72 Tenn. 644, as follows:
"Strictly speaking, a new statute does not repeal an old statute however inconsistent with it. It is a mere form for expressing the result to say that the one repeals the other by implication. The prior Act is not repealed but rendered inoperative, and this is made plain by the fact that a direct repeal of the latter Act, without any reference to the former, will, by a rule of common law, give efficacy to the former. It was precisely because the old Act never was repealed that it thereby became operative. It is a convenient, though inaccurate use of language to say that the new law repeals the old, and that the repeal of the new law revives the old. More properly the new Act is an obstacle to the operation of the old Act, which obstacle is removed by its passage."
It would, therefore, seem to be clear that Chapter 570, Private Acts of 1953, is a valid and constitutional statute and that the effect of same is to abolish the office of Judge of General Sessions for Rhea County as of September 1, 1954, and to deprive the complainant of his right to demand and receive a salary after that date.
Appellee, Harold Duncan, for the first time now raises the question in his brief that Chapter 570 of the Acts of 1953, is invalid for another reason. That is, the Act was by its terms, to take effect September 1, 1954, but before that date there was an amendment to Art. 11, Section 9, of the Constitution of Tennessee which became effective on the 19th day of November 1953, by proclamation of the Governor, which provides in part: "The General Assembly shall have no power to pass a special, local or private act having the effect of removing an incumbent from any municipal or county office or abridging the term or altering the salary * * *."
There is no merit in this suggestion. Whatever else may be said in this regard it is settled by the case of Wright v. Cunningham, 115 Tenn. 445, 91 S.W. 293, 295, that it is effective as provided by its own terms. The Court said in part, "There is no doubt that, if a statute be perfect in form when it leaves the hands of the Legislature, that body, in passing it, having complied with all of the prerequisites and safeguards provided by the Constitution for the enactment of laws, such statute is a valid law, even though it does not take effect immediately upon its passage. * * * The statute is vitalized immediately upon full compliance by the Legislature with the requirements of the Constitution for the enacting of laws. This is one thing. The time when it shall be the duty of the people to comply with its provisions is another; the latter depending upon the terms of the act itself."
It therefore seems clear that since this Act became a valid law on April 10, 1953, whereas the above amendment to the Constitution did not become effective until the 19th day of November 1953, and since said amendment does not purport to have any retroactive effect, the said Private Act, Chapter 570, is in no way affected by said constitutional amendment.
The judgment of the lower Court is reversed and judgment will be entered accordingly.

On Petition To Rehear.
A petition to rehear has been filed in behalf of Harold Duncan. The basis of the petition is that the General Sessions Court created by Chapter 868, Private Acts of 1949, was really nothing more than a County Court to be presided over by a County Judge. And therefore, upon such postulate the argument made in the original brief and argument of the appellee is *30 repeated in an effort to apply the cases of State v. Leonard, 86 Tenn. 485, 7 S.W. 453, and State ex rel. v. Link, 172 Tenn. 258, 111 S.W.2d 1024.
We are not able to agree with this postulate. By Chapter 485, Private Acts of 1949, the office of County Judge for Rhea County was abolished to be effective at the end of the 8-year term on September 1, 1950. Then by Chapter 868, supra, the Special Court was created and designated as the Court of General Sessions for Rhea County, and upon that Court was conferred the jurisdiction and power of the Justices of the Peace, and the jurisdiction and powers of the County Court, except the jurisdiction of the County Judge or Chairman in his official capacity as fiscal head and agent of the County Judge or Chairman to preside over the County Court and to look after the county finances and general operation of the County business.
It would seem obvious, therefore, that this Court called the General Sessions Court, was neither a Justice of the Peace Court nor a County Court but was a special Court combining the jurisdiction of the two.
How can it be said that the Judge of this Court was nothing more than a County Judge when the office of County Judge had been expressly abolished, thereby leaving the Chairman of the Quarterly County Court to preside over that body with reference to the public business of the County? If the purpose of the enactment of Chapter 868, supra, was to create a County Judge with those powers, why was it deemed necessary first to abolish the office of County Judge; it seems obvious that if the intention had been to confer those powers on the County Judge, then it could have been done simply by an Act so conferring the powers, as was done in the Act involved in Hodge v. State, 135 Tenn. 525, 188 S.W. 203, and in the Link case, supra.
On page two of the petition it is said:
"The Court was of the opinion that there was another Judge or another General Sessions Court for Rhea County because the Judge was to hold Court in Spring City and at Dayton. * *"
That statement arises out of an error on the bottom of page 4 of said opinion. That sentence beginning line 9, erroneously reads as follows [287 S.W.2d 28]:
"There are more than one General Sessions Court Judge presiding over two divisions of the Court, Dayton Division and Spring City Division * * *."
That sentence was intended to be:
"There not only can be but are more than one General Sessions Court Judge in some of the counties; here the Judge presides over two divisions of the Court, etc."
The opinion then stated [287 S.W.2d 28]:
"But at any time the Legislature saw fit it could create a second General Sessions judgeship."
This must of necessity be true, because if the business of the General Sessions Court of Rhea County became so burdensome as to be impossible or impracticable of being handled by one Judge, there can hardly be any doubt that another judgeship could be set up, or another division of the Court set up and presided over by a second Judge. It is well-settled that the Legislature has the power not only to create inferior Courts under the constitutional provision but to diminish or to enlarge or to transfer their jurisdiction in the interest of efficiency and economy, Art. 6, Section 1.
So we come back to what was said in the original opinion and that is  that the repealing Act in question did nothing but repeal the Act creating the General Sessions Court. It does not purport to devolve the duties of the General Sessions Judge upon any other official. It does not undertake to create any new office or officers. It does not leave the Court intact while attempting to devolve the duties of the office upon any other official. The general law, which was suspended, becomes reactivated and revives *31 the powers of the Justices of the Peace to them and to the County Court the powers that had been taken from it by Chapter 868, supra. We, therefore, do not see the applicability of State v. Leonard, supra, where the Act in question undertook to repeal a previous Act creating the office of County Judge and to devolve the duties of the County Court upon a Chairman thereof without any diminution or increase in those duties. On page 492 of the 86 Tenn., on page 455 of 7 S.W. the Court said:
"Here the court was left as it existed, except the change made in its official head. He was simply removed by the operation of the act, if it could take effect according to its terms, and another put in his place."
That is certainly not the situation in the present case where by the terms of Chapter 868, supra, the General Sessions Court had conferred upon it both the jurisdiction of Justice of the Peace as well as that of the County Court, with the additional provision of Section 3, and further with reference to misdemeanor cases wherein a party enters a plea of guilty or requests a trial upon the merits and expressly waives an indictment, presentment and a grand jury investigation and a jury trial.
The same thing is true in State ex rel. v. Link, supra, wherein, at the bottom of page 261 of 172 Tenn., page 1025 of 111 S.W.2d, the Court said:
"(3) The county court of Stewart county, over which the defendant presided as county judge, was not abolished, but the act if given effect would remove the judge from office, deprive him of its emoluments, leave the court in existence, and transfer its jurisdiction to a chairman of the county court to be elected from year to year under Code, § 10202. That is to say, the office would be transferred from the county judge to a chairman of the county court, another county judge under a different name. * * *"
Further down in the middle of page 262 of 172 Tenn., page 1025 of 111 S.W.2d, the Court said:
"The Legislature cannot remove a county judge by abolishing the office and devolving the duties upon a chairman of the county court. State v. Leonard, 86 Tenn. 485, 7 S.W. 453. The distinction between statutes ineffective to remove a judge from office, and statutes that accomplish removal by abolishing the tribunal and transferring its business to another, was made clear by Mr. Justice Wilkes in Judges' Cases, 102 Tenn. 509, 560, 53 S.W. 134, 146, 46 L.R.A. 567, * * *," all of which was referred to in the original opinion by the quoted matter to be found therein.
We do not see how the case of State ex rel. Tyler v. King, 104 Tenn. 156, 57 S.W. 150, cited in the original opinion, can aid the appellee in any way any more than the other two cases above referred to, because very clearly, the Special Court known as the General Sessions Court was abolished by the Act repealing Chapter 868, unless it can be said that the Judge of this Special Court was a County Judge. This could not be the case because the office of County Judge had been expressly abolished, leaving the Chairman of the County Court to preside over same and while it is evident from the discussion of County Judges of County Courts, in art. 6, of Phillips' Pritchard on Law of Wills that counties have either a County Judge or a Chairman of a County Court, but cannot have both.
The only other matter in the petition to rehear which we think should be responded to is on page 4, where it is said:
"Your petitioner is also very much aggrieved by the fact that this Court failed to consider the motion or the order directed to the attorney pursuing the appeal in this case as the majority of the members of the County Court of Rhea County had directed that the appeal be dismissed * * *"
*32 We did not fail to consider this matter but there was nothing before us but an informal paper writing signed by certain men purporting to be members of the County Court but the document did not purport to be the official action of that body which is the only way that the body can act. Nor was it authenticated in any other manner. We therefore, disregard it. Let the petition be overruled.