DUGGER v. INSURANCE CO.

(*Jackson.* June 22, 1895.)

1. INSURANCE. *Statute regulating liability on policies not, retrospective.*

The Court will not construe as retrospective, Acts 1893, Ch. 107, Sec. 1, making void stipulations limiting liability on insurance policies to less than the full amount of loss, if that does not exceed the amount of insurance. (*Post. pp. 248, 250.*)

Acts construed: Acts 1893, Ch. 107.

2. SAME. *Statute regulating liability on policies not denial of equal protection of the laws.*

The equal protection of the laws is not denied by Acts 1893. Ch. 107, Sec. 1, making void all stipulations in insurance policies limiting liability to less than the full amount of loss, if this does not exceed the amount of insurance. (*Post, pp. 248, 250-1.*)

Constitution construed: U. S. Const., XIV. Amendment.

Act construed: Acts 1893, Ch. 107.

3. SAME. *Statute regulating liability on policies not deprivation of rights or privileges contrary to law.*

Disseizin of privileges or deprivation of property otherwise than by the law of the land or due process of law, is not made by Acts 1893, Ch. 107, § 1, making void all stipulations in insurance policies which limit liability to less·than the full amount of loss. if this does not exceed the amount of insurance. (*Post, pp. 248, 251-257.*)

Constitution construed: Art. I., § 8 (Tenn.); XIV. Amendment (U. S.)

Act construed: Acts 1893, Ch. 107.

Cases cited and approved: Transportation Co. v. Bloch Bros., 86 Tenn., 392; Mann v. Tel. Co., 85 Tenn., 529; Coleman v. Satterfield, 2 Head, 264; Taylor v. Taylor, 12 Lea, 490; Truss v. State, 13 Lea, 311; 47 Ohio St., 409; 8 Am. R. R. & Corp. Cas., 115; 43 Wis., 449, 463; 45 Wis., 388; 71 Wis., 454; 52 Maine, 322; 4 Dillon, 177; 13 Fed. R., 526; 32 Fed. R., 273; 25 L. R. A., 250.

Dugger *v.* Insurance Co.

4. SAME.   *Excepting cotton in bales does not vitiate statute regulating liability on policies.*

Excepting insurance upon cotton in bales from the provision in Acts 1893, Ch. 107, Sec. 1, making void all stipulations limiting liability to less than the full amount of loss if this does not exceed the amount of insurance, does not make an arbitrary, unreasonable, and unnatural classification in violation of the Constitution.   (*Post, pp. 257–261.*)

Constitution construed: Art. I., § 8.

Cases cited and approved: Cole Manufacturing Co. *v.* Falls, 90 Tenn., 468; Stratton *v.* Morris, 89 Tenn., 498; Demoville *v.* Davidson County, 87 Tenn., 218; Parks *v.* Parks, 12 Heis., 634; Davis *v.* State, 3 Lea, 380.

Cases cited and distinguished: 22 L. R. A., 340; 24 L. R. A., 702; 22 S. W. R., 350; 10 S. E. R., 285.

5. SAME.   *Acceptance of policy containing void stipulation, effect.*

An insured does not waive the benefit of Acts 1893, Ch. 107, Sec. 1, providing that stipulations in insurance policies limiting liability to less than the full amount of loss, where such amount does not exceed the amount of insurance, shall be void, by accepting a policy containing such a stipulation.   (*Post, p. 261.*)

Cases cited and approved: 32 Fed. R., 273; 4 Dillon, 177; 52 Maine, 322; 47 Ohio St., 409.

6. STATUTES.   *When retrospective.*

The rule is well settled that the Courts will give a statute prospective, and not retroactive force, unless the purpose that it should have the latter effect is expressed by clear and positive command, or it is to be inferred by necessary or unequivocal and unavoidable implication.   (*Post, p. 249.*)

Cases cited and approved: 3 King's Digest, § 4801; 7 Johns., 478.

7. SAME.   *Susceptible of two constructions.*

If a statute is susceptible of two constructions, one of which will maintain, and the other destroy it, the Courts will always adopt the former.   (*Post, p. 250.*)

8. SAME.   *Affecting foreign corporations, valid.*

Statutes cannot be obnoxious to any constitutional objection which prescribe terms upon which foreign corporations shall enter the State, or which exclude them altogether.   (*Post, pp. 250, 251.*)

Dugger *v.* Insurance Co.

Cases cited and approved: State *v.* Insurance Co., 92 Tenn., 420; 127 U. S., 205; 118 U. S., 394; 8 Wall., 168; 119 U. S., 110; 94 U. S., 535.

9. SAME.   *Unconstitutional in part.*

A statute, unconstitutional in a separable and independent part, is not void *in toto.* (*Post, pp. 260, 261.*)

Cases cited and approved: Neely *v.* State, 4 Bax., 174; Burkholtz *v.* State, 16 Lea, 11; Tillman *v.* Cocke, 9 Bax., 429.

---

### FROM MADISON.

---

Appeal from Chancery Court of Madison County. ALBERT G. HAWKINS, Ch.

HAYS & HAYNES, LYNN & LYNN, and E. H. HATCHER for Complainants.

STOKES & STOKES, THOMAS STEELE, and SAM HOLDING for Defendants.

BEARD, J.   The defendant is a foreign insurance company, which, having complied with the requirements of Chapter 122 of the Acts of the Legislature of 1891, and, doing business in this State, delivered, in 1894, to the complainant in Tennessee the fire insurance policy in controversy.   The property covered by this policy was burned while it was in operation, and the insurer declining to pay the full amount of the loss as claimed, the assured filed the bill in this cause.   The defendant company admitted its liability

for three-fourths of this loss, and with its answer tendered and paid into the lower Court the amount conceded to be due, but it insisted that it was under no other or further obligation, on account of a clause in the policy, which is as follows:

"It is a part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that in the event of loss this company shall not be liable for an amount greater than three-fourths of the actual cash value of the property covered by this policy at the time of such loss; and in case of other insurance, whether policies are concurrent or not, then for its *pro rata* proportion of such three-fourths value."

On the other hand, the complainant contended that this stipulation was inoperative and void, by reason of Section 1, Chapter 107, of the Acts of the General Assembly of Tennessee, passed at the session of 1893, and which is in words and figures as follows:

"*Be it enacted by the General Assembly of the State of Tennessee*, That insurance companies shall pay their policy holders the full amount of loss sustained upon property insured by them; *Provided*, Said amount of loss does not exceed the amount of insurance expressed in the policy; and all stipulations in such policies to the contrary are, and shall be, null and void; *Provided, however*, That insurance policies upon cotton in bales shall not be subject to the provisions of this Act."

This Act was assailed by the defendant company in the Court below as unconstitutional. The Chancellor, however, held that it was constitutionally passed, and that its legal effect was to render null and void the clause in the policy set out above. He therefore gave complainant a decree for the full amount of the loss, less the sum admitted and paid into the registry of the Court below.

The case has been brought to this Court by appeal, and two questions have been presented for our determination, as follows:

1. Is the Act in question constitutional?

2. Conceding it to be constitutional, has not the complainant waived the benefit of it by accepting the policy with this stipulation embodied in it?

We will consider these in the order in which they have been stated.

1. It is contended by the defendant's counsel that it is a retrospective Act in its terms, impairing the obligation of contracts, and therefore void.

The rule is so well settled it is hardly worth while, at this late day, to cite authorities in support of it, that, in construing an Act of the Legislature, the Courts will always give it prospective and not retroactive force, unless the purpose that it should have the latter effect is expressed by clear and positive command, or it is to be inferred by necessary or unequivocal and unavoidable implication. Potter's Dwarris, note 9, p. 162; Endlich, Sec. 271; *Dosh* v. *Van Kleeck*, 7 Johns., 478; 3 King's Digest, 4801.

The contention of defendant that this statute is retrospective, rests alone upon the use of the verb ''are'' in the clause ''all stipulations in such policies to the contrary *are* and shall be null and void.'' We think, to adopt the view of defendant, the Court would depart from the well-established rule of construction above stated, and would impose upon the Act, as a whole, a strained and unnatural meaning. In addition, we would have to overlook another rule equally well settled, that, when an Act or any other instrument of writing is susceptible of two constructions, one of which will maintain and the other destroy it, the Courts will always adopt the former. Without further citation of authorities to illustrate our view, or an analysis of the statute, we have no hesitancy in holding, at least, that it is not obnoxious to this objection.

Again, it is said to be violative of the last clause of Section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall '' deny to any person within its jurisdiction the equal protection of the laws.'' It may be conceded the Supreme Court of the United States has settled beyond controversy that a corporation is a ''person'' within this amendment. *Missouri Pacific Railway Co.* v. *Mackey*, 127 U. S., 205. *Santa Clara* v. *Southern Pacific Railroad*, 118 U. S., 394. Yet it is equally true there is nothing in the Federal Constitution which prevents this State from prescribing the terms on which

foreign corporations shall come within its borders and carry on business with its citizens, or from excluding them altogether. *Paul* v. *Virginia*, 8 Wall., 168; *Fire Association* v. *People*, 119 U. S., 110; *Doyle* v. *Continental Insurance Co.*, 94 U. S., 535; *State* v. *Phœnix Insurance Co.*, 92 Tenn., 420. And, at most, in passing the Act in question, the Legislature, in so far as its general words embrace foreign corporations, has only supplemented the Act of 1891 by imposing an additional term or condition upon them, on compliance with which they are authorized to enter into insurance contracts with citizens of the State. Nor can we see in what respect it infringes this clause of the Fourteenth Amendment requiring "equal protection of the law," when it operates alike on all companies issuing policies of insurance on property, whether they be foreign or domestic. "Such legislation is not obnoxious to the last clause of the Fourteenth Amendment, if all persons subject to it are treated alike under similar circumstances and conditions in respect both of the privileges conferred and the liabilities imposed." *Missouri Pacific Railway Co.* v. *Mackey*, *supra*.

But, again, it is urged that this Act violates so much of Section 8 of Article I. of the Constitution of this State as provides "that no man shall be disseized of his . . privileges . . or deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land," as

well as that part of Section 1 of the Fourteenth Amendment to the Federal Constitution, which is as follows: "Nor shall any State deprive any person of . . property without due process of law." This objection rests on the theory that the Legislature, in thus interfering with the right of insurance companies, and of the citizens of the State to make agreements for indemnity against loss by fire, such as are mutually satisfactory, is guilty of impertinent intermeddling with private contracts with which the public has no concern, and over which it has no control, and, in so doing, it has disseized or deprived the parties in interest of a valuable property right, within the terms of these constitutional provisions.

"The right to acquire and possess property necessarily includes the right to contract. *Leep* v. *St. Louis Ry. Co.*, 58 Ark., 407; (S. C., 41 Am. St. Rep., 100). This right of contract inheres in property, and, in connection with its possession and use, forms its chief element of value. It is only by contract that its ownership can be acquired or transferred. And it is certainly true that if the Legislature should undertake to provide that a man, or any class of men, however general, should neither alienate property already acquired, nor make contracts looking to the acquisition of more or other kinds of property; or, that the citizens of the State, in whole or in part, should not have the capacity to enter into any agreements with regard to their own services or employment, such an Act would "transcend

the due bounds of legislative power, even though no express constitutional provision could be pointed out with which it would come in conflict." Cooley Con. Lim. (6th Ed.), 484. While this is unquestionably true, yet it is also certain that this right is not unlimited. The right of contracting with regard to one's own is subject to legislative control and conditions. The reports of our own State, as well as of our sister States, and of the Supreme Court of the United States, furnish cases in abundance illustrative of this last proposition. Without stopping to point out statutes like those forbidding the owner to sell his "unwholesome fish or flesh," or "bread made from unwholesome flour," or "adulterated spirituous liquors," or from delivering to a purchaser a poisonous drug without first labeling it as "poison" (M. & V. Code, § 5632), all of which are maintained upon the ground of being within the limits of the police power of the State, we call attention to the clear recognition by this Court of the right to place limitations on personal contracts, as found, among others, in the cases of *Transportation Co.* v. *Bloch*, 86 Tenn., 392, and *Mann* v. *Western Union Telegraph Co.*, 85 Tenn., 529, where it was held that these corporations could not contract for exemption from liability for the negligence of their employes. It is true these decisions rest upon the theory that upon the railroad and telegraph a public use is impressed which, of itself, sanctions legislative interference. But we are by no means restricted to

cases of this class. In 1849-50 the Legislature passed
an Act, among other things, providing that the hus-
band shall not "sell his wife's real estate during
her life without her joining in the conveyance," and
again, in 1879, enacted that he should not "con-
tract" away the rents and profits of his wife's
land, "except by her consent obtained in writing."
Code (M. & V.), §§ 3338, 3343. And, though these
Acts of restriction were in the face of the husband's
right at common law to unlimitedly dispose of both,
yet their wisdom and constitutionality have been main-
tained by this Court. Coleman v. Satterfield, 2 Head,
264; Taylor v. Taylor, 12 Lea, 490.

In Truss v. State, 13 Lea, 311, notwithstanding
an owner's common law right to sell and deliver
his property at any hour, whether of the night or
day, he may choose, yet this Court held an Act
to be constitutional which made it unlawful to sell
or to buy loose cotton between sunset and sunrise.
And, at the present term of the Court, upon the
ground of public policy, we have held void a stipu-
lation in a promissory note by which the maker
obligated himself to waive the benefit of the exemp-
tion laws in the event a judgment was taken on it
and an execution was issued on this judgment.

Upon the same ground the Courts decline to en-
force contracts with married women and minors, where
minority or coverture is relied on as a defense.
And the right of the State to pass general statutes
regulating contracts, such as the statute of frauds,

has never been called in question. Illustrations of this principle might be indefinitely multiplied by going to the reports outside of the State. We will content ourselves with referring to a few cases involving statutes like the one in question, and in which there seems not to have arisen a suspicion in the minds of counsel, or of the Courts, that these statutes impinged on either the United States or the State Constitution.

Ohio has a statute which provides that, in the absence of any change increasing the risk, without the consent of the insurers, and, also, of intentional fraud on the part of the insured, in case of a total loss, the whole amount mentioned in the policy or renewal upon which the insurers received a premium, should be paid to the assured. In *Queen Insurance Co.* v. *Leslie*, 47 Ohio St., 409 (S. C., 24 N. E. Rep., 1072), in regard to a policy which contained stipulations very like the one in the policy here involved, the Court say: "That the statute was founded upon considerations of public policy, its purpose being to exact care and diligence upon the part of insurance companies, to avoid improper risks and overinsurances, by requiring their agents to make personal examination of the property and to fix its insurable value, as well as to protect the insured against unreasonable forfeiture and defenses," and held that the statute prevailed as against the *contra* stipulations.

In *German Insurance Co.* v. *Eddy* (Nebraska), Am.

Railroad and Corp. Cases, Vol. VIII., 115, a ques-
tion arose with regard to the effect of a similar
statute upon a policy containing a stipulation for arbi-
tration, to ascertain the value of the property when
a loss occurred. The Court say: "The provisions of
the statute override any stipulations in the policy to
that effect, as an insurance company can only do busi-
ness in the State on the conditions provided by law."

The effect of State statutes upon policies of in-
surance with stipulations in violation of the terms
of the statutes, has been considered in the following
additional cases, which we will simply cite: *Rully*
v. *The Franklin Insurance Co.*, 43 Wis., 449;
*Beaumont* v. *Brewers' Insurance Co.*, 43 Wis., 463;
*Oshkosh* v. *Germania Insurance Co.*, 71 Wis., 454;
*Thompson* v. *Citizens' Insurance Co.*, 45 Wis., 388;
*Emery* v. *Piscataqua Fire & Marine Insurance Co.*,
52 Maine, 322; *White* v. *Insurance Co.*, 4 Dillon,
177; *Fletcher* v. *Insurance Co.*, 13 Fed. Rep., 526;
*Wall* v. *Equity Life Association*, 32 Fed. Rep., 273.
In all these cases the Courts are agreed the
statutes in question were demanded by an enlightened
public policy, that they override such stipulations in
a policy as are at variance with them, and in no
one of them is a doubt suggested as to the consti-
tutional power of the Legislature to so mold these
contracts as to secure to the assured the full benefit
of the premium he has paid.

Further, in the exercise of this right to control
in the matter of insurance against fire, the Legisla-

ture of Pennsylvania passed an Act confining the issuance of policies exclusively to corporations, and the Supreme Court of that State, by a majority opinion, held it to be constitutional, upon the ground, among others, that "the business of insurance against loss by fire is, by reason of its magnitude, its importance to property owners, and the nature of the business, a proper subject for the exercise of the police power of the State." *Commonwealth* v. *Vrooman*, 25 L. R. A., 250. Without meaning to approve or dissent from the conclusion reached in that case, we refer to it to show how far the State's power to interfere in insurance contracts has been pressed by a Court of the highest respectability.

Without further elaboration of this point, we are content to add that the Act of 1893 does not violate either of the constitutional provisions quoted above.

Again, it is insisted this act violates Section 8 of Article I. of our State Constitution, and is, therefore, void. This contention assumes that the act is partial in its character, and the criticism upon it by the counsel for defendant company is that, in its classification, it is "arbitrary, unreasonable, and unnatural." At any rate, it is not partial so far as insurance companies are concerned. All these are put in the same category, and all alike are required to pay "the full amount of the loss sustained" in the contingency contemplated by the statute. *Cole Manufacturing Company* v. *Falls*, 6 Pickle, 468; *Stratton* v. *Morris*, 5 Pickle, 498. But it is said

17—11 P

that the discrimination is between "those who insure cotton in bales and those insuring all other kinds of property," or, to put it differently, in that the act, "for purposes of insurance, divides all property into two classes—first, cotton bales, second, everything that is not cotton bales;" and it is this classification which, it is urged, is "arbitrary, unreasonable, and unnatural." It is true that "distinctions in these respects must rest upon some reason upon which they can be defended" (Cooley's Con. Lim., p. 390), and that statutory classifications, to be maintained, must be "natural, and not arbitrary." *Demoville* v. *Davidson County*, 3 Pickle, 218. The question in each case, therefore, is, Is the classification natural, or the reverse? and, in this particular case, is there any sound and legal reason why cotton in bales, with regard to insurance, should have been put into a class by itself? Others have been exempted from the operation of this otherwise general statute. We think there is. It is a matter of common knowledge that cotton, from the time it is gathered from the stalk, through all of its stages, until it reaches and forms a part of manufactured goods, is very inflammable. It is prepared for transit by being placed in bales, and is transported in this form to the warehouses of the merchant, where it is held for a longer or shorter time, as the necessities of commerce may require. In these warehouses it is stored in large quantities, which represent frequently vast sums of money, and during these periods it is

at all times more or less exposed to the peril of fire. A spark touching the lint which gathers outside of and clings to the cotton bales, will kindle a fire that will rapidly spead until it becomes a great conflagration, a conflagration which it is most difficult to control or extinguish until it has consumed the mass within its reach. In inflammability and liability to complete combustion, it differs from all others of the agricultural products of this State. The large and perilous risks that are taken by insurance companies on "cotton in bales," and the apprehension lest the general rule, if extended to it, might altogether, or to a large extent, prevent our citizens from getting proper insurance, no doubt induced the Legislature to cover it by a proviso of exemption.

We think this statement is sufficient to show that this exception is not "arbitrary, unreasonable, and unnatural." If it was necessary, the authorities in this State which sustain this conclusion, might be quoted from at length. We are satisfied to refer to *Parks* v. *Parks*, 12 Heis., 634; *Davis* v. *State*, 3 Lea, 380; *Demoville* v. *Davidson Co.*, 3 Pickle, 218.

The cases of *Briceville Coal Co.* v. *People*, 147 Ill., 66 (S. C., 22 L. R. A., 340); *Low* v. *Rees Printing Co.* (Nebraska), 24 L. R. A., 702; *State* v. *Loomis*, 22 S. W. R., 350; *State* v. *Goodwill*, 10 S. E. R., 285, and others of the same class relied upon by the defendant company, are widely distinguished from the case at bar. To illustrate this,

we will take as types the two cases of *Low* v. *Rees Printing Co.*, *supra*, and *State* v. *Loomis*, *supra*. The first of these involved the constitutionality of an Act of the Legislature of Nebraska, which provided that eight hours shall constitute a legal day's work for all classes of mechanics, servants, and laborers, except those engaged in farm and domestic service, and the Court very properly held that there was no reason for this discrimination between the laborers of the State, and that the Act was partial and void. In the second of these cases was involved an Act "making it unlawful for any corporation, person, or firm, engaged in manufacturing or mining, to issue, for the payment of wages of labor, any order," etc., payable otherwise than in lawful money, and the Court say: The Legislature here singles "out those persons who are engaged in carrying on pursuits of mining and manufacturing," and their employes, distinguishing them from all other employers and employes, in limiting their right to contract, and thus making a "classification which is purely arbitrary." This Act was held unconstitutional, and properly so. In none of the cases of which these two are examples, were the Courts able to find a reason for the statutory discrimination. Even, however, if the contention of the defendant company was correct, that this proviso exempting "cotton in bales" from the operation of the statute was "arbitrary and unreasonable," yet, as it was not an inducement to the passage of the Act proper, and is easily separable

Dugger *v.* Insurance Co.

from it, upon well-settled principles of statutory construction, the proviso would be eliminated and the balance of the statute would be permitted to stand. *Neely* v. *State*, 4 Baxter, 174; *Burkholz* v. *State*, 16 Lea, 71; *Tillman* v. *Cocke*, 9 Baxter, 429.

2. Lastly, it is insisted that the acceptance of this policy by the assured, with this stipulation, was a waiver of the benefit of the statute, which, at most, conferred only a personal privilege. This is unsound. In the first place, the statute, in express terms, makes the stipulation in question "null and void." This statutory provision annuls this obnoxious agreement, and, in legal effect, it is as much a part of the policy as if written into its face. *Emery* v. *Piscataqua F. & M. Co.*, *supra.* In the second place, as was said in *Queen Ins. Co.* v. *Leslie*, *supra:* "The statute cannot be regarded as conferring on the assured a mere personal privilege, which may be waived by agreement. It molds the obligation of the contract into conformity with its provisions, and establishes the rule and measure of the insurer's liability." The opinion of Judge Brewer in *Wall* v. *Equitable Life*, *supra*, and that of Judge Dillon in *White* v. *Ins. Co.*, *supra*, will be found in harmony with the above.

The result is, we affirm the Chancellor in maintaining the constitutionality of this act.