STATE ex rel. JOHN T. BOONE et al., Relators, v.
JOE E. TORRENCE, and the METROPOLITAN
GOVERNMENT OF NASHVILLE and DAVIDSON
COUNTY, TENNESSEE, Defendants.

STATE ex rel. GALE ROBINSON et al., Relators, v.
JOE E. TORRENCE, and the METROPOLITAN
GOVERNMENT OF NASHVILLE and DAVIDSON
COUNTY, TENNESSEE, Defendants.—470 S.W.2d 356.

Middle Section. April 30, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

226

John W. Nolan, III, and Charles Patrick Flynn, Nashville, for relators.

Charles E. Griffith, III, John P. Branham, and Thomas E. Fox, Assistant Attorney General, Nashville, for defendants.

PURYEAR, J. These two cases present identical questions to be determined and, therefore, were consolidated for the purpose of trial and also for the purpose of these appeals.

The relators in both cases are Judges of the six different divisions or parts of General Sessions Court of Davidson County, Tennessee, all of whom were elected in August 1966, for the term of eight years, with the exception of A. A. Birch. Jr., who was elected for an unexpired term which will expire on September 1, 1974, and for

convenience herein we will refer to these Judges as relators.

We will refer to the defendants and cross-complainants as the Finance Director and the Metropolitan Government, respectively.

The relators in the first suit, which was filed on August 22, 1969, are John T. Boone, Samuel J. Galloway and Daniel Boone, and the relators in the second suit, which was filed on September 5, 1969, are Gale Robinson, A. A. Birch, Jr., and John M. Lynch, Sr.

At this point, it is necessary to give a brief review of pertinent legislative history which preceded the filing of these two suits.

By Chapter 12, Private Acts of 1937, the General Assembly created the General Sessions Court of Davidson County. Since 1937, said Chapter 12, of the Private Acts for that year has been amended several times, but it has never been repealed.

By Chapter 120, Public Acts of 1953, now codified as Chapter 37 of Title 6, Tennessee Code Annotated, the General Assembly enacted an enabling Act providing that counties and municipalities which elect to do so, may, upon complying with the provisions thereof, consolidate all, or substantially all, of the governmental and corporate functions then or thereafter vested in the counties in which such municipalities are located and to provide for the creation of Metropolitan Governments which may be used to fulfill the *"unique and urgent needs of a modern metropolitan area."*

One of the pertinent provisions of said Title 6, Chapter 37 T.C.A. is 6-3719 which, at the time of original enactment thereof, was as follows:

"6-3719. *Courts and judicial functions—Administrative functions of county judge.* — This chapter shall have no effect upon the chancery courts, circuit courts and criminal courts established for or functioning in the county affected by a consolidation hereunder, and it shall have no effect upon the judicial functions of the county judge. The charter of a metropolitan government may provide that the powers and duties of the county judge as accounting officer and as general agent of the county shall be exercised by such officer or agency of the metropolitan government and in such manner as said charter may provide. *Municipal courts created by the charters of the principal city and smaller cities may be provided for, consolidated or abolished by the charter for metropolitan government as courts thereof;* provided that the term of office of an incumbent judge of a municipal court shall not be terminated or abridged by the charter for metropolitan government, however, at the end of the term of any incumbent judge of a municipal court ending after the adoption of the charter for metropolitan government, said municipal judge shall in no manner hold said office, for a further term except by the approval of a majority of the voters voting in an election to be held for such purpose or in the next regular election. *General sessions courts and juvenile courts established for the county shall be provided for and continued in the charter for metropolitan government as courts thereof.*" (emphasis supplied)

This Act of the General Assembly was enacted pursuant to authority vested in it by an amendment to the State Constitution adopted in November 1953, known as amendment 8 to Article 11, Section 9, of the Constitution.

In 1961, the General Assembly amended Title 6 of Chapter 37 by adding to Section 6-3704 a new sub-section designated as sub-section (b) which is as follows:

"(b) Said charter commission may be created in the manner prescribed by private act of the general assembly in any county meeting the population requirements as provided in sec. 6-3703."

Pursuant to T.C.A. 6-3704, sub-section (b), supra, the General Assembly enacted Chapter 408, Private Acts of 1961, creating a Metropolitan Government Charter Commission for Nashville and Davidson County.

This Metropolitan Government Charter Commission finally prepared a Charter which sought to provide for all the needs of this particular Metropolitan Government known and designated as "Metropolitan Government of Nashville and Davidson County, Tennessee."

Thereafter, this completed Charter was ratified and approved by the voters within the area thereby affected and this completed creation of the Metropolitan Government, which is a defendant in these two cases.

Some pertinent provisions of this Charter are as follows:

"Sec. 14.01. *Metropolitan court created; divisions; jurisdiction and powers.*

There shall be a metropolitan court, consisting of three divisions, to be designated Division I, Division II and Division III, with one judge for each division. Division I of the court shall have exclusive jurisdiction to hear, try and dispose of cases involving the breach of any ordinance of the metropolitan government excepting traffic violations, and to impose fines for the breach of such ordinances. Division II and Division III of the court shall have the exclusive jurisdiction to hear, try and dispose of cases in which violations of the metropolitan traffic laws, ordinances and resolutions may be charged, or in which offenses under the general laws of the state involving vehicular operations are charged, and to impose fines for the breach of any such laws, ordinances or resolutions. The judges shall have power to remit fines and to release or suspend sentences imposed by them.

The judges of the metropolitan court shall have jurisdiction to bind over offenders to the grand jury where probable cause is found to exist in cases involving violations of the criminal laws of the state and in lieu of bond to commit to jail the persons charged and also jurisdiction in misdemeanor cases to bind over to the general sessions court.''

''Sec. 14.02. *Election, term, qualifications and compensation of judges.*

The judge of Division I and the judge of Division II of the metropolitan court shall be elected at the general judicial election on the first Thursday in August, 1966, and thereafter, every eight (8) years. A judge of the metropolitan court shall have been licensed to practice

law in the State of Tennessee for at least five (5) years prior to his election; shall have been a resident of the area of the metropolitan government for at least the same period; and shall be not less than thirty (30) years of age at the time of his qualification. *Judges of the metropolitan court shall be paid the same compensation, and shall be under the same restrictions as to the practice of law, as is provided by general law for judges of circuit courts."* (emphasis supplied)

"Sec. 14.07. *Vacancies filled by mayor and election.*

Whenever a vacancy occurs in the office of judge of a division of the metropolitan court, or when a new metropolitan judgeship is created, the mayor shall appoint a qualified person to fill the office until the next biennial election in August occurring more than thirty (30) days after such vacancy, at which time an election shall be held to fill the vacancy or appointment for the remainder of the term or for the ensuing term as the case may be."

"Sec. 14.12. *General sessions courts.*

Courts of general sessions for Davidson County created by chapter 12 of the Private Acts of 1937 are hereby recognized as courts of the Metropolitan Government of Nashville and Davidson County. Pursuant to Tennessee Code Annotated, section 6-3719, said courts are hereby provided for and continued, with all rights, duties, powers, obligations, privileges and responsibilities as set forth in said chapter 12 of the Private Acts of 1937 and all acts amendatory thereof. In addition to the above enumerated powers, the gen-

eral sessions judges shall have power to issue warrants for the breach of metropolitan ordinances in furtherance of the authority granted in section 14.05 of this article.''

It is worthy of note that in Section 14.01, which created the Metropolitan Court, the singular, *"Court"*, is used, whereas, in 14.12, pertaining to General Sessions Courts, the plural *"Courts"*, is used.

In 1969, T.C.A. Section 6-3719 was amended when the General Assembly enacted Chapter 298, of the Public Acts of 1969, which is as follows:

''BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Section 6-3719, Tennessee Code Annotated, is amended by adding at the end the following new paragraph:

For all purposes contained within the charter for a metropolitan government, judges of the general sessions court shall likewise be judges of the metropolitan court and shall not engage in the private practice of law.

SECTION 2. This Act shall take effect on becoming a law, the public welfare requiring it.

PASSED: May 8, 1969.''

This amendment to T.C.A. 6-3719 was passed on third and final reading May 8, 1969, and approved by the Governor on May 20, 1969.

After passage and approval of said Chapter 298, Public Acts of 1969, the Metropolitan Council of the Metropolitan Government passed the following resolution:

"RESOLUTION NO. 69-741

A RESOLUTION COMMENDING THE METROPOLITAN NASHVILLE AND DAVIDSON COUNTY LEGISLATIVE DELEGATION IN THEIR ACTION REGARDING THE GENERAL SESSIONS COURT OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY.

WHEREAS, the 86th General Assembly of the State of Tennessee has passed legislation to amend Title 6, Chapter 14 of the Tennessee Code Annotated particularly Section 6-3719 thereof; and

WHEREAS, by such action of the General Assembly the General Sessions Courts of Davidson County, Tennessee have become courts (sic) Metropolitan Government of Nashville and Davidson County, Tennessee.

NOW, THEREFORE, be it resolved that Davidson County Metropolitan Legislative Delegation be commended for such action;

AND furthermore be it resolved that the Metropolitan Council of Nashville and Davidson County sustain and concur in such action by cooperating in elevating said Courts.

Be it resolved that the Elevation of these courts shall take effect upon passage of this resolution and the Metropolitan Government of Nashville and Davidson

County will undertake immediately to comply with such action of the 86th General Assembly of Tennessee.

THIS resolution shall take effect from and after its passage the welfare of the Metropolitan Government of Nashville and Davidson County requiring it." (Tec. Rec. p. 8)

This resolution was signed by thirty members of said Metropolitan Council.

On August 22, 1969, John T. Boone, Samuel J. Galloway and Daniel Boone, three of said General Sessions Judges, filed a petition for mandamus in Circuit Court of Davidson County, and on September 5, 1969, Gale Robinson, A. A. Birch, Jr., and John M. Lynch, Sr., the other three General Sessions Judges filed a similar petition for mandamus in Circuit Court of Davidson County.

Since the two cases were consolidated and the petitions and cross-bills in both cases are substantially the same, with exception of the names of the relators, we will refer to them as if there were only one petition and one cross-bill.

Said petition alleges that the Director of Finance of the Metropolitan Government and the Metropolitan Government of Nashville and Davidson County, Tennessee, have unlawfully failed to increase relators' salaries in accordance with the provisions of Chapter 298, Public Acts of 1969 and provisions of the Charter of said Metropolitan Government.

Said petition prays that a writ of mandamus issue commanding the Finance Director and Metropolitan

Government to forthwith comply with the provisions of Chapter 298, Public Acts of 1969 and provisions of the Charter of the Metropolitan Government by paying compensation to relators for their services as Metropolitan Judges from the effective date of said Chapter 298, Public Acts of 1969.

To said petition the Finance Director and Metropolitan Government filed a demurrer coupled with an answer and cross-bill, alleging in the demurrer that the relators' petitions were insufficient in that more than a ministerial duty is imposed upon the Finance Director and the Metropolitan Government, for which mandamus would not lie.

In said answer and cross-bill the Finance Director and Metropolitan Government deny that the relators are entitled to any compensation in addition to that which they are already being paid as General Sessions Judges and allege that Chapter 298, Public Acts of 1969, is in violation of Article 6, Section 7, of the Tennessee Constitution; that said Chapter is in violation of Article 11, Section 9, amendment 6 of the Tennessee Constitution; that said Chapter is in violation of Article 11, Section 9, amendment 8 and T.C.A. Section 6-3711(t) and Section 19.01 of the Charter of Metropolitan Government; and that said Chapter is invalid because of vagueness.

In said cross-bill, the Finance Director and Metropolitan Government pray that the Attorney General of the State be made a party to said cross-bill and also pray that if the Court should determine that Chapter 298, Public Acts of 1969 is a valid legislative enactment, that the Court determine the salaries, duties and other rights of the parties under said Chapter.

To said cross-bill the Attorney General of the State of Tennessee filed an answer, neither admitting nor denying the allegations thereof because he had no particular knowledge regarding such allegations, and therefore, submitted the matter to the discretion of the Court insofar as his rights were concerned.

The relators first filed a motion to strike the demurrer, which motion was overruled, and the relators then filed an answer to the cross-bill averring that Chapter 298, Public Acts of 1969, is valid legislation and also in said cross-bill the relators reiterated and relied upon the allegations of their petition for mandamus.

The Judges of all Divisions of the Circuit Court of Davidson County recused themselves and requested the Chief Justice to appoint another Judge to try the cases, whereupon the Chief Justice designated Honorable Howard J. Vorder Bruegge of the Fifteenth Judicial Circuit of Tennessee as Special Judge to try said cases.

The cases were heard on November 21, 1969, as a result of which hearing the trial Court sustained the demurrer, but also considered the cases further upon the other pleadings, including the answer and cross-bill, and the evidence adduced, as a result of all of which the trial Court concluded that Chapter 298, Public Acts of 1969 * *

"can be given a reasonable and sensible meaning by holding that this enactment only has the effect of increasing the jurisdiction of the Court of General Sessions of the Metropolitan Government of the City of Nashville and Davidson County." (Memo. opinion p. 35 Tec.Rec.)

The Court then dismissed the original petition and cross-bill by decree entered on January 5, 1970.

From such decree, the relators prayed and were granted a broad appeal and the Metropolitan Government prayed and was granted an appeal from that portion of the trial Court's decree declaring Chapter 298, Public Acts of 1969 to be constitutional and valid.

The Finance Director and the Metropolitan Government have filed four assignments of error as follows:

I

"The Court erred in failing to find that Chapter 298 of the Public Acts of 1969 constitutes an attempt to increase the salary of the Judges of the Court of General Sessions of the Metropolitan Government of Nashville and Davidson County during their term of office, and, therefore, violates Article 6, Section 7 of the Constitution of Tennessee.

II

The Court erred in failing to find that Chapter 298 of the Public Acts of 1969 is a special Act affecting The Metropolitan Government of Nashville and Davidson County in its governmental capacity without providing by its terms for approval by the local legislative body or by the people, and, therefore, violates Amendment 6, Article 11, Section 9 of the Constitution of Tennessee.

III

The Court erred in failing to find that Chapter 298 of the Public Acts of 1969 constitutes an attempt to

amend the Charter of The Metropolitan Government of Nashville and Davidson County without the approval of the voters in a referendum election, and, therefore, violates Amendment 8, Article 11, Section 9, of the Constitution of Tennessee, Tennessee Code Annotated, Section 3711(t), and Section 19.01 of the Charter of the Metropolitan Government.

## IV

The Court erred in failing to find that Chapter 298 of the Public Acts of 1969 is so vague and indefinite as to render it violative of Article 1, Section 9 and Article 11, Section 8, of the Constitution of Tennessee.''

The relators have filed four assignments of error as follows:

## I

''The Court erred in sustaining the demurrer of the defendants to the petitions for mandamus of the relators.

## II

The Court erred in holding that Chapter 298, Public Acts of 1969, only increased the jurisdiction of the Court of General Sessions of the Metropolitan Government of Nashville, Davidson County, and did not provide additional or increased compensation since the Courts holding increased the duties, responsibilities and jurisdiction of the General Sessions Court.

## III

The Court erred in failing to declare Chapter 298, Public Acts of 1969, was a valid enactment of the Leg-

islature which when considered with Article 14, Section 1402, of the Metropolitan Charter, adopted in 1963, entitled the relators (Judges) to the compensation fixed by the Metropolitan Charter.

## IV

The Court erred in holding that Chapter 298, Public Acts of 1969, could be given a reasonable and sensible meaning by increasing the jurisdiction of the Court of General Sessions of the Metropolitan Government of Nashville, Davidson County, without increasing compensation, because such construction violates Article 1, Section 8; Article 1, Section 21; and Article 2, Section 1, of the Tennessee State Constitution, and Article 7, Section 2, and the 14th Amendment of the United States Constitution."

The central issue involved in these cases is the amount of compensation to be paid the relators as Judges of the General Sessions Court of Metropolitan Nashville and Davidson County.

It is conceded that the amounts currently being paid to relators as such Judges are as follows: $12,000.00 per annum to each of the Judges of Parts One, Two and Three of such General Sessions Court and $7,000.00 per annum to each of said Judges of Parts Four, Five and Six of said Court.

By these mandamus proceedings the relators seek to compel the Finance Director and the Metropolitan Government to pay each of them the salary currently being paid to Circuit Judges, beginning with the effective date of Chapter 298, Public Acts of 1969.

The basic problem involved in this litigation is one of many such problems which have arisen since the advent of Metropolitan Government in Tennessee.

Necessarily involved in consideration of the questions presented on these appeals is Article 6, Section 1 of the Constitution, which is as follows:

"Section 1. *Judicial power.*—The judicial power of this State shall be vested in one Supreme Court and in such circuit Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace. The Legislature may also vest such jurisdiction in Corporation Courts as may be deemed necessary. Courts to be holden by Justices of the Peace may also be established."

It has been held that General Sessions Courts are such "inferior Courts" which the Legislature has the power to create by virtue of the foregoing constitutional provision. Duncan v. Rhea County (1955), 199 Tenn. 375, 287 S.W.2d 26; Durham v. Dismukes (1960), 206 Tenn. 448, 333 S.W.2d 935.

On the other hand, the Metropolitan Court, which was created by Section 14.01 of the Metropolitan Government Charter, is a "Corporation" Court in which Article 6, Section 1 of the Constitution authorizes the Legislature to vest *"such jurisdiction in corporation courts as may be deemed necessary."* Hill v. State ex rel. Phillips (1965), 216 Tenn. 503, 392 S.W.2d 950.

In the latter mentioned case the Metropolitan Court of defendant, Metropolitan Government, was directly

involved and the Supreme Court emphasized the distinctive nature of such court. This distinction was also emphasized in State ex rel. Johnson v. Davis (1959), 204 Tenn. 510, 322 S.W.2d 214, although it has been held that Corporation Courts are a part of the judicial system of the State.

Nevertheless, the primary function of Corporation or Municipal Courts is enforcement of municipal ordinances and the primary function of General Sessions Courts is enforcement of State laws and the judicial determination of civil disputes within the confines of limited jurisdiction.

Certain supernumerary powers may be added to each of these offices without disturbing the basic distinction between the two. Elizabethton v. Carter County (1958), 204 Tenn. 452, page 465, 321 S.W.2d 822.

■ Therefore, the Metropolitan Court, which was created by Section 14.01 of the Metropolitan Charter, and the General Sessions Court, which was created by Chapter 12, Private Acts of 1937, are separate and distinct Courts and the offices of the respective Judges thereof who preside in such Courts are separate and distinct offices within the meaning of Article 2, Section 26 of the Constitution of Tennessee which prohibits one person from holding more than one lucrative office at the same time.

■ The words "The Metropolitan Court" which are used in the 1969 Act, surely mean "The Metropolitan Court" which was created by Charter Section 14.01.

■ These same words also mean "The Metropolitan Court" mentioned in Charter Section 14.02, which provides that judges of the Metropolitan Court *"shall be paid the same compensation * * * as is provided for judges of Circuit Courts."*

So it necessarily follows that if the 1969 Act should be construed as making Judges of the General Sessions Court *"likewise"* or also Judges of the *"Metropolitan Court"* then such Act violates the provisions of Article 2, Section 26 of the Constitution which is as follows:

"Sec. 26. *Ineligibility—Lucrative offices.*—No Judge of any Court of law or equity, Secretary of State, Attorney General, Register, Clerk of any court of Record, or person holding any office under the authority of the United States, shall have a seat in the General Assembly; nor shall any person in this State hold more than one lucrative office at the same time; provided, that no appointment in the Militia, or to the office of Justice of the Peace, shall be considered a lucrative office, or operative as a disqualification to a seat in either House of the General Assembly."

It also necessarily follows that if the 1969 Act should be construed as increasing the compensation of Judges of the General Sessions Court upon the effective date of said Act, then it violates Article 6, Section 7 of the Constitution which provides as follows:

"Sec. 7. *Compensation of judges.*—The Judges of the Supreme or Inferior Courts, shall, at stated times, receive a compensation for their services, to be ascer-

tained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office nor hold any other office of trust or profit under this State or the United States.''

And if it is to be construed as a local or private Act, instead of a public Act, then it violates the so-called ''Home Rule'' amendment, which is a part of Article 11, Section 9 of the Constitution, as follows:

''The General Assembly shall have no power to pass a special, local or private act having the effect of removing the incumbent from any municipal or county office or abridging the term or altering the salary prior to the end of the term for which such public officer was selected, and any act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect *unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected.''* (emphasis supplied)

■ However, we do not believe that the entire 1969 Act should be held to be unconstitutional for any of the foregoing reasons and we agree with the conclusion of the trial Court that:

''* * * this Act can be given a reasonable and sensible construction by holding that this enactment only has

the effect of increasing the jurisdiction of the Court of General Sessions of the Metropolitan Government of the City of Nashville and Davidson County." (Memo. opinion at p. 35, Tec.Rec.)

■ It has been held in numerous cases that if a statute is capable of two interpretations, the Court will adopt the one which will sustain it rather than the one which will render it void as unconstitutional. Dugger v. Mechanics' and Traders' Co. of New Orleans (1895), 95 Tenn. 245, 32 S.W. 5, 28 L.R.A. 796; Garvin v. State (1884), 81 Tenn. 162; Donathan v. McMinn County (1948), 187 Tenn. 220, 213 S.W.2d 173; Bayless v. Knox County (1955), 199 Tenn. 268, 286 S.W.2d 579, and many other cases holding to the same effect in West's Tennessee Digest, Volume 5, under sec. 48 of "Constitutional Law."

If we should adopt the theory of the relators and hold that they are now "likewise" Judges of the Metropolitan Court, as well as Judges of the General Sessions Court, an anomalous situation would be created in the event of a vacancy in the office of a Judge of the General Sessions Court.

Section 14.07 of the Charter provides that in the event of a vacancy in the Metropolitan Court, the Mayor shall appoint some qualified person to serve until the next election.

Chapter 12, Private Acts of 1937 provides that in the event a vacancy occurs in the General Sessions Court, the Governor shall have the power to appoint some qualified person to serve until the next election.

So, in the event of such vacancy in the General Sessions Court, would the Mayor, the Governor or both of them appoint someone to temporarily fill such vacancy?

Fortunately, we need not seek the answer to this question; it is probably only one of many which would arise if we should agree with the theory of relators.

The Metropolitan Government insists that the 1969 Act is a private or local Act and is therefore void because it violates Article 11, Section 9, supra, and also violates several statutes and charter provisions, which are cited in the brief, but need not be specifically mentioned herein.

We cannot agree with this insistence. Regardless of what the sponsors of the Act may have intended it to be, we do not believe the General Assembly intended for it to be a private or a local Act, for at least two reasons:

First, because it purports to amend a Code Section which is a general law; and second, because it contains no language which requires local approval thereof as required by the express provisions of Article 11, Section 9, supra. In Winter v. Allen (1963), 212 Tenn. 84, 367 S.W.2d 785, and Frazer v. Carr (1962), 210 Tenn. 565, 360 S.W.2d 449, the Supreme Court held that 6-3701 et seq. is a general law.

The Metropolitan Government also insists that the 1969 Act is void because it is so vague and indefinite that no reasonable construction can be accorded it so as to hold it to be constitutional.

■ As we have already said in this opinion, we conclude that a reasonable and sensible construction of the Act is to hold that the only effect thereof is to confer additional jurisdiction on certain General Sessions Judges. This being our conclusion, we cannot declare the Act to be void because of vagueness.

It has been held that if a Court can give an Act any reasonable construction that will render it valid, it is the Court's duty to do so. Griffin v. Davidson County (1952), 194 Tenn. 335, 250 S.W.2d 554; Morrison v. Crews (1951), 192 Tenn. 20, 237 S.W.2d 1; Bayless v. Knox County, *supra*.

For the reasons hereinabove indicated, we find no merit in any of the assignments of error filed by the Finance Director and the Metropolitan Government and therefore, all such assignments are respectfully overruled.

Now, turning to the assignments of error filed by the relators, the first question we wish to examine is raised in the second assignment of error under which it is insisted that when the jurisdiction and responsibilities of the General Sessions Court were increased by the 1969 Act, it should necessarily follow that said Act should also be construed as lawfully increasing the compensation of said Judges.

In support of this assignment, the relators argue that Tennessee has long recognized the propriety and constitutionality of providing additional or increased compensation for members of its judiciary commensurate with their duties, responsibilities or jurisdictions, even when such changes occur during a judge's term of office.

248

■ This argument may have a certain fascination for all members of the judiciary who feel that their compensation is not commensurate with the services which they render, but, plausible as it may seem, it does not alter the fact that compensation for such judges must be provided by the appropriate legislative forums that are charged with the responsibility of providing for it, and of course, in conformity with the Constitution.

The cases cited in support of this argument are those which fall within the same broad classification as the case of Bayless v. Knox County, supra, wherein the additional compensation awarded during the judicial term was for services rendered by a County Judge in addition to his judicial services. In that case the Supreme Court said:

"Therefore, if this 1951 statute had done no more than increase the amount of compensation which the County Judge of Knox County should receive as financial agent it would have been a valid enactment, notwithstanding the fact that such statute was enacted during the time for which he was elected. Must it be held invalid because the amount fixed is the total amount such Judge shall receive for his services as County Judge and as finance agent?

This 1951 statute is equally capable of three constructions, to wit: (1) That the Legislature intended to increase the salary of the Judge, as such; or (2) increase the amount of his salary as Judge and the amount of compensation for his services as financial agent; or (3) increase the amount of compensation to be received for his services as finance agent. 'It is

always to be presumed that the General Assembly did not intend to pass an unconstitutional act, and when an act is susceptible to two constructions or interpretations, one which will preserve and one which will destroy, that must be given it which will preserve it.' Kirk v. State, 126 Tenn. 7, 13-14, 150 S.W. 83, 85.

The rule just stated makes it the duty of the Court to construe this 1951 statute as being one intended only to increase the amount of compensation to be received by the County Judge for his services as financial agent. Such being the required construction, the result is that this 1951 statute must be adjudged valid, and the action of the Chancellor in so holding (by sustaining the demurrer) affirmed.'' Supra 199 Tenn., pp. 275, 276, 268 S.W.2d, p. 582.

If it can be plausibly argued that a judge's salary should be correspondingly increased each and every time his jurisdiction and responsibility are increased, then it could also be plausibly argued that whenever a judge's jurisdiction and responsibility are decreased, then his salary could be correspondingly decreased. Such reasoning violates both the letter and spirit of Article 6, Section 7 of the Constitution.

We take judicial notice of the fact that the General Assembly has, from time to time, conferred upon the Circuit Courts concurrent jurisdiction in certain cases with Chancery Courts and if we allow ourselves to follow the relators' arguments to its ultimate conclusion we would reach the incorrect conclusion that Circuit Judges are entitled to additional compensation each time such concurrent jurisdiction is conferred upon them re-

gardless of whether such provision for additional compensation is made during the judicial term or at the beginning of a succeeding term. Needless to say, we think this argument in untenable.

What we have already said in dealing with questions concerning the constitutionality and validity of the 1969 Act, in disposing of the Finance Director's and Metropolitan Government's assignments of error, apply with equal force to the realtors' assignments assailing the action of the trial Court in finding and concluding that the only reasonable and sensible construction which could be given to the 1969 Act, consistent with its constitutionality, is that it merely increases the jurisdiction of the Court of General Sessions.

Since the trial Court decided the ultimate question involved in these cases contrary to the theory of the relators by holding that the enactment of the 1969 Act did not entitle them to additional compensation, in which conclusion we have concurred, then it is unnecessary for us to consider the relators' first assignment of error which challenges the action of the trial Court in sustaining the demurrer to relators' petition for mandamus.

Therefore the first assignment is pretermitted.

We find no merit in the other assignments filed by the relators and therefore, such assignments are respectfully overruled.

The judgments of the trial Court are affirmed and the costs of these appeals will be borne equally by the parties,

in other words, the relators will pay one-half of such costs and the Finance Director and Metropolitan Government will pay the remaining one-half thereof.

Shriver, P.J. (M.S.), and Todd, J., concur.